MAXINE GRUBB, by her next friend, MYRTLE GRUBB, Respondent, v. THE KANSAS CITY RAILWAYS COMPANY, Appellant.

Kansas City Court of Appeals, April 4, 1921.

1. CARRIERS: Negligence: Passenger: Surging Crowd: Demurrer: Evidence Held Sufficient to Show that Moving Crowd in its Attempt to Board Car Caused Plaintiff to be Thrown Thereunder.  In an

action against street railway for injury to an infant, intending to become a passenger, evidence that movement of crowd in its rush to board car caused plaintiff to be thrown thereunder, *held* sufficient for submission to jury and defandant's demurrer was properly overruled.

2. ———: ———: **Evidence Held to Show Likelihood of Danger from Pressure of Crowd and a Matter to be Reasonably Anticipated by Defendant.** In an action by infant, intending to become a passenger, injured by being pushed under car by movement of crowd, evidence *held* to show likelihood of waiting passenger being shoved or pushed on to track and into danger from moving car by the pressure of crowd struggling for places on car, and a matter reasonably to be anticipated by defendant.

3. ———: ———: **Failure to Adopt Reasonable Expedients to Obviate Danger from Pressure of Crowd Attempting to Get on Car is Negligence.** Where the congestion of passengers and their concentration toward moving car was not an extraordinary circumstance, but a condition which past experience would require defendant to foresee and provide against by the adoption of reasonable precautions, to prevent physical harm to waiting passenger caused by known tendency of crowds, and failure to adopt reasonable expedients to obviate danger to passenger from pressure of crowd is negligence rendering carrier liable for damage proximately caused.

4. ———: ———: **Degree of Care: Must Exercise Highest Degree of Care to Protect Passenger from Injury Caused by Other Passengers.** It is the duty of the carrier to exercise the highest practical degree of care, and not merely ordinary care, to protect its passenger from violence or injuries from other passengers.

5. ———: ———: **Evidence Held Sufficient to Show Direct Causal Connection Between Negligence and Injury.** In an action against carrier by infant injured by being pushed under car by crowd, the evidence was sufficient to justify finding of jury that there was a direct causal connection between the negligence of defendant in failing to protect a passenger from being pushed by other passengers under moving car and the injury received by her, and also to enable the jury to find with reasonable certainty that her injury was due to that negligence rather than to any other cause.

6. ———: ———: **Observance of Negligent Method for a Long Period Without Untoward Results Does not Establish a Correct Standard of Care.** The mere observance of a negligent method for a long period of time, free from untoward results, does not establish a correct standard of care and safety, especially where evidence

207 Mo. App.—2

shows that such method had not always been followed, defendant's claim that the method observed on the occasion of plaintiff's injury had been followed for a long period of time with no untoward result, and hence there was no negligence, cannot be upheld.

7. INSTRUCTION: Negligence: An Instruction that Plaintiff was a Passenger, Defining Duty Owed to Prevent Movement of Crowd from Injuring Passengers Waiting to Board Car, Held Not Confusing, Misleading, Broader than Pleading and Sufficiently Specific. In an action for injury to minor caused by being pushed under moving car by movement of crowd at loading dock where passengers boarded cars, an instruction that plaintiff occupied the relation of a passenger while waiting thereon to board defendant's car, and which defined duty of defendant to protect passengers from injury as result of action, movement or misconduct of passengers or persons at said loading place, was not confusing, misleading or broader than the scope of general negligence alleged in petition.

8. ———: Conceded Fact: No Error in Submitting Question as to Whether Plaintiff was a Passenger Where Conceded Fact Showed She was Clearly Such. Where under the conceded facts plaintiff was a passenger there was no error in giving an instruction submitting the question of whether she was a passenger.

9. ———: Passenger: Degree of Care: An Instruction Submitting Lower Degree of Care than Law Required not Prejudicial Since Neither Merits of Action nor Substantial Rights of Parties were Affected. Where plaintiff was entitled to protection afforded a passenger, an instruction requiring defendant to exercise only ordinary care could not have been prejudicial, since neither the merits of the action nor substantial rights of parties were affected, particularly where no effort or care of any kind was used to prevent plaintiff's injury, and the action of the crowd and injury caused thereby could have been reasonably anticipated, as defendant's negligence necessarily existed, whether its failure to provide against such occurrence consisted of one thing or another.

10. ———: Speed: Where Speed of Car is One of Attendant Circumstances Causing Injury which Jury was Entitled to Know in Passing upon Negligence, an Instruction Withdrawing Same Properly Refused. Where the matter of speed of a car was gone into by both sides, not as a ground of negligence, but incidentally as one of the attendant circumstances of the occurrence, which the jury was entitled to know in passing upon the negligence submitted as foundation of the case, an instruction not to find for plaintiff on ground of excessive speed and which not only withdrew speed as an act of negligence, but as an incidental fact, was properly refused.

11. ————: **Negligence: An Instruction Authorizing Verdict for Defendant Even Though it was Neglient, was Properly Refused.** Where an instruction told the jury that if motorman and conductor did not know persons were riding on front step of car then even though such persons did strike and injure plaintiff, defendant is not liable, was properly refused because said instruction authorized a verdict for defendant even though it was negligent in failing to protect plaintiff from movement of crowd, and even though motorman, without regard to whether he should have seen, ran his car through the crowd with persons jumping on the front end and hanging to the same so as to knock passengers down as car passed the waiting throng.

12. ————: **An Instruction That it was not Duty of Defendant to Provide Means to Keep People off Railway Track Properly Refused.** Instructions that it was not duty of defendant to provide a railing or other means to keep people off railway track were properly refused because same amounted, in effect, to a demurrer to the evidence and withdrew entirely from jury matters of which there was ample evidence in support of issue of defendant's negligence, and even if defendant was entitled to an instruction that it was not under obligation to provide means to "forcibly keep people off its tracks" it should be drawn so as not to mislead or confuse the jury, although there was no contention that such was defendant's duty.

13. ————: **An Instruction that if Plaintiff was Knocked Down by Person Running Through Crowd and Thereby Pushed under Wheels of Car Properly Modified.** An instruction that if plaintiff was knocked down by some person running or pushing through crowd and thereby pushed under wheels of car defendant was not liable, was erroneous, in that, it permitted jury to find for defendant; even though plaintiff was injured by movement of crowd, and court properly modified the instruction so as to read that if plaintiff was knocked down by man running in opposite direction of crowd, defendant was not liable, and thereby defendant was given full benefit of evidence supporting one of its defenses.

14. **EVIDENCE: Speed of Car: Where both Sides Introduced Evidence of Speed, Defendant Cannot Complain that Same was Immaterial.** Where both sides introduced evidence as to speed of car, not relied upon as an act of negligence proximately causing injury, but as a circumstance to be regarded in considering what precautions defendant should have taken, an objection that the same was wholly immaterial cannot be allowed as neither side could complain.

Grubb v. K. C. Ry. Co.

15. ————: Behavior of Holiday Crowds: Admissible as Bearing upon Defendant's Duty to Anticipate Danger and Guard Against it. Evidence as to behavior of usual Sunday and holiday crowds was admissible as bearing upon defendant's duty to anticipate danger and guard against it, and the fact that at time the crowds were larger would make no difference, since the crowd whether large or small, acted in the same way.

16. ————: Medical Expert: Whether Plaintiff's Injury Permanently Tender Subject of Expert Evidence and Testimony of Expert Concerning Same did not Invade Province of Jury and was not Speculative. Evidence of medical expert as to question whether plaintiff's injury would be permanently tender; his testimony that as ends of the nerves supplying the toes were involved, and caught in scar tissue they would be permanently tender, was clearly subject of expert evidence, did not invade province of jury and was not speculative.

17. ————: Res Gestae: Testimony of Other Passengers Knocked Down Admissible as Part of Res Gestae. Admission of testimony that other persons, including a woman standing near plaintiff, were knocked down, was not reversible error, since the fact could hardly be eliminated from any description of what occurred, the whole thing happening in a moment, constituting one entire occurrence, was clearly part of the res gestae.

18. DAMAGES: Excessive: Verdict for $5000 in Favor of Minor Nine Years Old, for Injury to Foot, Causing Removal of all but Two Toes, not Excessive. Where plaintiff, a minor, nine years old, had her foot crushed so that an operation was necessary, removing all but two toes and she was in hospital a month, using crutches after getting out of bed, and was required to visit hospital for a period of two months after leaving it, the injury being permanent, not only as to loss of portion of foot, but as to tenderness owing to necessary pressure thereon in walking, causing small scabs or sores to frequently develop, and plaintiff is unable to walk rapidly or run without limping, a verdict of $5000 was not excessive.

Appeal from the Circuit Court of Jackson County.—*Hon.* Wm. O. Thomas, Judge.

Affirmed.

*W. M. Bowker, Guthrie, Conrad & Durham* and *Hale Houts* for respondent.

*Charles N. Sadler,* and *R. J. Higgins* for appellant.

TRIMBLE, P. J.—Plaintiff, a girl nine years of age, accompanied by relatives, and desiring to return from Fairmount Park to Kansas City on defendant's street car line, paid her fare and was admitted by defendant through its turnstile to its platform or loading dock at which its cars stopped to receive passengers. She thereby became a member of a crowd variously estimate at from 80 to 200 persons waiting on this dock to board the first car to arrive at said dock on its way back to the city. This platform, about 120 feet long and 14 feet wide, was constructed of cinders, the surface thereof extending almost to the rails and rising very close to the height thereof. A car arrived at the dock and went past the larger portion of the waiting crowd before coming to a stop, the purpose being to afford room for a second car, should it arrive, to stop at the same platform. As the car was moving by and coming to a stop, the crowd surged toward it and along the dock in the direction the car was going, in the effort to board it as soon possible. The plaintiff and her relatives, one of whom was an adult, were well toward the front part of the waiting crowd, and as it surged toward the car and along the dock in the direction the car was moving, the little girl was pushed down and under the car so that a wheel ran over and crushed her foot before the car came to a standstill. She brought this suit for damages alleging negligence in general terms, namely that plaintiff was thrown down, knocked under the car and was permanently injured by reason of the carelessness and negligence of the defendant, it agents, servants and employees. There was a verdict and judgment for plaintiff in the sum of $5000 from which defendant has appealed.

The case was here once before. [See Grubb v. Dunham et al., Receivers, 214 S. W. 256.] The general facts and circumstances surrounding the infliction of the injury are stated in that opinion and need not be restated here, except in such different particulars as may hereinafter be set forth.

It is urged that defendant's demurrer to the evidence should have been sustained for reasons which will now be considered and discussed.

So far from the former opinion holding that the evidence did not disclose sufficient facts to make a submissible case of actionable negligence, it expressly says "it appears from the record that upon further development of the facts the plaintiff may be able to present a case" wherein a causal connection between plaintiff's injury and defendant's negligence will appear. Hence the cause was remanded instead of the judgment being reversed outright. In the trial from which the former appeal was taken, the case was submitted to the jury on the theory that negligence in the speed of the car was the proximate cause of the injury, but this court was of the opinion that there was no causal connection between the speed of the car and the injury, since it would have occurred no matter whether the movement of the car was fast or slow.

At the second trial the case was submitted to the jury on the issues of whether the aforesaid movement of the crowd caused plaintiff to be thrown down and under the car and whether such movement of the crowd and the resulting injury could have been reasonably anticipated by defendant in the exercise of ordinary care and could have been guarded against by the exercise of ordinary care. And it is upon this theory that the demurrer to the evidence must now be considered.

As heretofore stated, access to the platform was had through turnstiles in the fence between the park and the defendant's platform and at these turnstiles defendant maintained employees who collected the fares of persons seeking homeward passage on the cars before such persons were admitted through the turnstiles onto the platform. Consequently plaintiff and the other persons on the platform waiting to board a car had paid their fare and occupied the *status* of accepted passengers. The platform extended practically to the rail of the track and was in height approximately flush or level with the

top of the rail. There was no fence, guards or rails between the platform and the track for the purpose of preventing persons from being shoved upon the track by the pressure of the waiting crowd surging toward an arriving and still moving car in the eager and hurried effort to board it at the earliest possible moment.

The evidence offered in plaintiff's behalf tended to show that when a person was admitted through the turnstile onto the platform he found himself in the midst of the crowd standing thereon; that the crowd was rather dense at this portion of the platform and when the car came alongside of the platform plaintiff and her companions were well up in the front part of the waiting crowd which was pressed close alongside the track and that when the car came alongside the platform it passed the standing crowd until the rear end of the car was about at the front or cityward edge of the crowd. There is no controversy over this since the motorman testified the car was thus stopped. There is also no question but that, as the car moved past the waiting crowd, it surged toward the car and along with it as it moved, in a "pushing jostling" effort to get on as soon as possible.

While the car was thus moving past the crowd, and during the latter's surge toward and along with the movement of the car, plaintiff's evidence is that she was, by the pressure and shoving of the crowd from behind, thrown down and pushed under the car so that her foot came upon the rail and was run over and badly crushed, and she would perhaps have suffered still greater injury had not a man seized and pulled her from under the car.

Defendant had two witnesses who say that the little girl was knocked under the car by a man rushing, to the rear door of the car, in the opposite direction the car was going and the crowd was moving. These two men, however, both say they did not see the man brush against the little girl nor see her at the moment she was struck or fell, though it is wholly incomprehensible why one of them didn't see her if it occurred in the way he says it did; and there is evidence tending to contradict

the theory that the little girl was struck or pushed under by any such man going in that direction. We must, therefore, accept that version of the occurrence which the jury accepted, and which the evidence justified them in accepting, namely, that the surging, pushing, jostling crowds, in the eager rush to get advantageous seats on the car pushed the little girl under the wheels of the car.

The injury happened on a Sunday afternoon at an hour when many persons were desiring to return from the park to their homes in the city. There was ample evidence tending to show that the crowds on Sunday and holidays were larger than on week days; that it was the usual thing for crowds on Sunday afternoon to act as this one did, and, to rush forward intent on getting a seat so as not to have to stand on the way to the city; that always there was a tendency of the crowds to rush forward, pushing and shoving, to get on the cars; and this appears from defendant's witnesses and that it had frequently experienced this tendency of crowds and of persons therein surging, pushing and trying to board the cars. One of defendant's witnesses, a motorman, in speaking of the habit of crowds at these boarding places to rush toward a car about to stop, said, "Well, the fact of the business, when we pulled up, generally the fact of the business is they were *just like a big crowd of stampeded cattle to get on the car*" and that sometimes an official or employee of the defendant company was there to keep the crowd back. The conductor of the car which ran over plaintiff's foot admitted that crowds out there customarily waiting for the cars would, as the car approached, push and shove and fuss and fight to see who gets on and gets a seat, and that such had been the customary conduct of crowds when there was a hundred or so people around that loading place. There was also evidence that the men in charge of the turnstiles that afternoon made no attempt to limit the number of persons admitted to the dock and no one was thereon to keep the people back from the track or from crowding up close

to it and to the cars as they approached and moved along the loading dock to their particular stopping place.

It is manifest from the foregoing that the likelihood of a waiting passenger being shoved or pushed on to the track and into danger from a moving car, by the pressure of the crowd struggling for places on the car, was a matter reasonably to be anticipated by the defendant. The congestion of the passengers and their concentration toward the moving car was not an extraordinary circumstance, but a condition which past experience would require defendant to foresee and provide against by the adoption of reasonable precautions to prevent physical harm to a waiting passenger, arising out of and caused by the known tendency of crowds to thus act under such circumstances; and a failure to adopt reasonable expedients to obviate the danger to a passenger arising from the pressure of a combination of passengers thus permitted to act, is negligence rendering the carrier liable for any damage thus proximately caused. [Michie on Carriers, sec. 2560, p. 2026. See also, Kuhlen v. Boston, etc., Ry. Co., 79 N. E. (Mass.) 815; Glennen v. Boston Elevated Ry. Co., 93 N. E. 700; Kelley v. Boston Elevated Ry. Co., 96 N. E. 1031; Collins v. Boston Elevated Ry. Co., 105 N. E. 353; Ulrich v. Interborough Rapid Transit Co., 159 N. Y. Supp. 868; Reschke v. Syracus, etc., R. Co., 139 N. Y. Supp. 555; Dashew v. Interborough Rapid Transit Co., 175 N. Y. Supp. 877.] These cases hold that it is the duty of the carrier to exercise the highest particular degree of care and not merely the ordinary care which plaintiff's instruction in the case at bar required of the defendant. While we are not aware of any case in this State arising on the same state of facts, yet the same principle is announced as to the duty of the carrier to protect its passengers from violence or injuries from other passengers. [Spohn v. Mo. Pac. Ry. Co., 87 Mo. 74, 80, 101 Mo. 249, 266; Abernathy v. Missouri, etc., R. Co., 217 S. W. 568, 569.]

It is also clear that the evidence is such as to amply justify a jury in finding that there was a direct causal

connection between the negligence and the injury, and also that the evidence is such as to enable the jury to find with reasonable certainty that the injury was due to that negligence rather than to any other cause.

The claim that the method observed on this occasion had been followed for a long period of time with no untoward results and hence there was no negligence, cannot be upheld. In the first place, the evidence shows that such method had not always been followed, as precautions had at various times been taken. In the next place, the mere observance of a negligent method for a long period of time, happily free from untoward results, does not establish a correct standard of care and safety. [Heberling v. City of Warrensburg, 204 Mo. 604.] The plaintiff's evidence does not show that any one or two specific individuals, of their own volition and unconnected with anything the crowd did or the defendant should or could have done, inflicted the injury, but that is was the common movement of the crowd surging forward in its eager haste to board the car that pushed the little girl under it. The contention that defendant's demurrer to the evidence should have been given cannot, therefore, under any view of the case be sustained.

Plaintiff's instruction No. 1 told the jury that if they found defendant maintained the loading dock for the reception of passengers and also the turnstile through which they were required to pass at which plaintiff's fare was collected, and that if they found that plaintiff, after payment of fare, was admitted to said dock, intending to take passage on the cars, then plaintiff while waiting thereon occupied the relation of a passenger, and defendant owed her "the duty to use reasonable means and precaution, and to select and employ a reasonably sufficient number of reasonably competent servants to protect plaintiff from such action, movement or misconduct of passengers or persons at said loading place" as made it not reasonably safe for those waiting to take passage, and which could have been reasonably anticipat-

ed by defendant, if the jury found it could have been reasonably anticipated by defendant in the exercise of ordinary care and that if the jury found plaintiff was thrown down by such a movement of the crowd of passengers permitted on said loading place by defendant, and that such movement and throwing down could, in the exercise of ordinary care, have been reasonably anticipated by defendant, and could, by the exercise of ordinary care, been guarded against by defendant, and that defendant failed to exercise reasonable care to anticipate and guard against such movement of the crowd of persons permitted on the loading place and that by reason of such failure on the part of defendant plaintiff was thrown down and under said car and injured, then the verdict should be for plaintiff provided they found she was in the exercise of ordinary care for her own safety.

We fail to see wherein this instruction is confusing or misleading. Neither is it broader than the scope of general negligence alleged in the petition. The instruction was within the petition and within the evidence under the petition, and the instruction was sufficiently specific. [Moore v. Missouri Pacific R. Co., 136 Mo. App. 210, 214.]

There was no error in submitting the question of whether she was a passenger, for, under the conceded facts she clearly was such. This feature did not render the instruction erroneous. [Breen v. United Rys. Co., 204 S. W. 521, 523.] And it could not have been prejudicial, for although plaintiff was entitled to the protection afforded a pessenger, yet the instruction required defendant to exercise only ordinary care. [Martin v. Farmer's Coal Co., 174 Mo. App. 441, 445.] There is no question that no effort or care of any kind was used on the occasion in question to prevent the thing that did happen, and if the action of the crowd and its result could have been reasonably anticipated, then defendant's negligence necessarily existed whether its failure to provide against such occurrence consisted of one thing or another. [At-

kinson v. American School of Osteopathy, 240 Mo. 338, 354.] We cannot say the instruction contained reversible error, since neither the merits of the action nor the substantial rights of the parties were affected. [Honea v. St. Louis, etc., R. Co., 245 Mo. 621, 644; Secs. 1276, 1513, R. S. 1919.]

Defendant asked an instruction telling the jury "you cannot find for plaintiff on the ground of excessive speed" which was refused, and this is assigned as error. The instruction does not specify what speed was referred to, nor did it afford any means to the jury by which it could determine whether the speed of the car (if that was the speed meant) was excessive. [Slezak v. St. Louis Transit Co., 142 Mo. App. 693, 707.] The matter of speed of the car was gone into by both sides, not as a ground of negligence, but incidentally as one of the attendant and surrounding circumstances of the occurrence and which the jury was entitled to know in passing upon the negligence submitted as the foundation of the case. The instruction, as asked, not only withdrew speed as an act of negligence but also as an incidental fact which could be considered by the jury on the real question submitted.

Defendant's instruction 2, which told the jury that if the motorman and conductor did not know persons were riding on the front step of the car then even though such persons did strike and injure plaintiff, defendant is not liable therefor and a verdict for plaintiff could not be returned on account thereof, was properly refused. It authorized a verdict for defendant even though it was negligent in failing to make provision to protect plaintiff from the movement of the crowd and even though the motorman, without regard to whether he should have seen, ran his car through the crowd with persons jumping on the front end and hanging to the same so as to knock passengers down as the car passed the waiting throng. Certainly the motorman would have been negligent if in the exercise of care he could have seen them. [Rogers v. Kansas City Rys. Co., 204 S. W. 595, 596.]

Defendant contends that the evidence conclusively shows that plaintiff was *not* knocked down by persons riding on the step of the car having jumped on as it went by the crowd, and hence the instruction should have been given to counteract the effect of evidence introduced showing that persons did jump on, and their bodies knocked *some* persons down. We are inclined to agree with defendant that the evidence does conclusively show that plaintiff was *not* knocked down by persons riding on the car after they had jumped thereon, since plaintiff says she was knocked down and under the car by the pushing of the crowd from behind, and defendant's two witnesses say that she was knocked down by a man running through the crowd to the rear end of the car who afterward jumped on. But if the evidence does conclusively show that she was not knocked down by persons riding on the steps after they had jumped on, where is there any room for the aforesaid instruction? It did not say there was no evidence that plaintiff was thus knocked down but submitted a question as if there was such evidence, and, as stated, in doing so, it erroneously omitted a necessary element, namely, whether the motorman could have seen the persons on the step. It therefore could have fulfilled no office in counteracting the effect of the evidence that persons did jump on and that some persons were knocked down by their bodies as the car passed.

Instructions 3, 4 and 5 asked by defendant were properly refused. They told the jury it was not the duty of defendant to provide a railing or other means to keep people off the track and that defendant was not guilty of negligence in failing to do so. These sought to withdraw entirely from the consideration of the jury matters of which there was ample evidence in support of the issue of defendant's negligence. A giving of any one of them would have amounted, in effect, to a demurrer to the evidence. Even if defendant was entitled to an instruction that it was not under obligation to provide

means to "forcibly keep people off its tracks" it should be drawn in a way so as not to mislead or confuse the jury. No one was contending, however, that such was defendant's duty.

There was no eror in modifying defendant's instruction No. 6. As drawn, the instruction told the jury that if plaintiff was knocked down by some person running or pushing through the crowd and was pushed or knocked under the wheels of the car, then defendant was not liable. This would alow the jury to find for defendant even though she was injured by the movement of the crowd. The court modified the instruction so that if plaintiff was knocked down by the man running in the opposite direction of the crowd, as defendant's witnesses claimed, then defendant was not liable. The modification gave the defendant the full benefit of its evidence and at the same time removed all ambiguity of meaning and confined the defense to the evidence in the case, which was proper. [Dutcher v. Wabash R. Co., 241 Mo. 137, 173.]

Various complaints are made as to the introduction of testimony. We have examined them all and find no reversible error in them. The evidence as to the speed of the car was objected to because no qualification was shown but there was. Defendant now says it was wholly immaterial. While it was not relied upon as the act of negligence proximately causing the injury, it was a circumstance to be regarded in considering that precautions should be taken. However, both sides went into the matter of speed, and neither can now complain. [Schrodt v. St. Joseph, 109 Mo. App. 627, 631.]

The evidence as to the behavior of the usual Sunday and holiday crowds was clearly admissible as bearing upon defendant's duty to anticipate the danger and guard against it. The fact that at times the crowds were larger would make no difference since the crowd, whether large or small acted in the same way.

The evidence of the medical expert went to the question of whether plaintiff's injury would be permanently tender or not. The expert said that as the ends

of the nerves supplying the toes were involved and caught in the scar tissue, they would be permanently tender. It was clearly a subject of expert evidence, did not invade the province of the jury and was not speculative. [Neilly v. St. Louis, etc., R. Co., 215 Mo. 567, 596.]

We see no reversible error in the admission of the testimony that other persons, including a woman standing near plaintiff, were knocked down. The whole thing happened in a moment and constituted one entire occurrence; the fact could hardly be elimnated from any description of what occurred and was clearly a part of what is so often vaguely and comprehensively included in the term *res gestae*. [Stofer v. Harvey, 204 S. W. 587, 588; Lindsay v. St. Louis, etc., R. Co., 178 S. W. 276, 279.]

Plaintiff's foot was mashed and crushed so that an operation was necessary, removing all but two toes. She was in the hospital perhaps a month, using crutches after getting out of bed, and being required to frequently visit the hospital for a period of two months after leaving it. The injury is, of course, permanent, not only as to the loss of the portion of the foot involved but also as to tenderness therein owing to the necessary pressure thereon in walking. Small scabs or sores frequently develop on the injured part and plaintiff is unable to walk rapidly or run without limping. Throughout her life plaintiff must, from her ninth year, carry this impediment and injured member. We are not disposed to say that a verdict of $5000 is excessive. [Rapp v. St. Louis Transit Co., 190 Mo. 144, 162; Chamlee v. Planters Hotel Co., 155 Mo. App. 144, 162; Price v. Hiram Lloyd Building, etc., Co., 191 Mo. App. 395, 405.]

It is needless to say that an appellate court will not deal with the question of the weight of the evidence.

Finding no reversible error in the record, the judgment must be, and is, affirmed. All concur.