[No. 26833.   Department Two.   February 24, 1938.]

H. T. (PAT) HUGHES, *Respondent*, v. BOUNDARY GOLD PLACERS, INC., *et al., Appellants.*[1]

*R. H. Coshun* and *W. Harold Hutchinson,* for appellants.

*Little, Burgunder & Smith,* for respondent.

[1]Reported in 76 P. (2d) 611.

BLAKE, J.—Plaintiff and defendant Boundary Gold Placers, Inc., entered into a contract evidenced by the following writing:

"Mr. Pat Hughes                                    Aug. 20, 1935
Seattle, Wash.
"Dear Sir:
  "Confirming our verbal agreement this is to say that the Boundary Gold Placer Inc. will pay you one share of stock for each share you and your salesmen sell.
                              "Very truly yours,
                              "BOUNDARY GOLD PLACERS INC.
                              By J. WATTS PHILLIPS, Pres.
                              M. G. PHILLIPS, Sec."

Alleging that, pursuant to and in furtherance of the agreement, he had "organized an extensive sales force," plaintiff brought this action to recover 22,160 shares of stock of defendant company, which, he asserted, was the number of shares sold by his "salesmen." Upon issue joined, the cause was tried to the court, which found that plaintiff's "salesmen" had sold 14,112 shares of stock, and that plaintiff, under the contract, was entitled to that number of shares. Defendants appeal.

The number of shares to which the court found respondent entitled was computed upon the sales of stock made by three people: Mrs. McCullough (1,100 shares), Henry Mills (7,712 shares), and Mr. Crosby (5,400 shares). The question at issue is whether these people were respondent's "salesmen," in contemplation of the contract, or were employees of appellant company. It is admitted that Mrs. McCullough was a "salesman" of respondent. As we read the record, the finding that Mills and Crosby were respondent's salesmen rests partially upon evidence and partially upon construction of the contract.

Respondent contended that, under the contract, anyone whom he introduced to the president of the company, who thereafter sold stock, was his salesman.

Not only that, he claimed commissions on sales of stock by people who were introduced to the president by people he (respondent) had introduced.

We think it is implicit in the contract, as evidenced by the writing, that respondent was to organize a sales force—to enter into contracts with salesmen and compensate them out of the shares of stock he was to receive. It is clear from the record that he did not organize a sales force in the ordinary acceptation of the term. Nor, except in the case of Mrs. McCullough, is there any evidence from which it can be reasonably inferred that he entered into a contract with anybody to sell stock. He himself testified:

"Q. Did you make arrangements with the salesmen to sell on commission, or anything like that? A. No, sir. I never had anything to do with making the arrangements. All I had to do was to bring them in. Q. And to whom were they turned over then? A. To Mr. Phillips. Q. What contact did you keep up with these salesmen after they went to work? A. I never kept up any contact with them at all. That was not in the agreement. Q. Who were they working under? A. Working under Mr. Phillips. Q. Do you know where they got their prospects from? A. No, sir. . . . Q. Did you have any arrangements with them regarding any payment of commission by you? A. No, sir. Mr. Phillips done all that himself. Q. These men were hired by the company? A. Yes, sir. Q. And the company made a commission agreement with the men? A. Yes. Q. You had no connection with that whatsoever? A. The only connection I had was to bring them in there. Q. You brought them in there? A. Yes, sir. Q. And they were company salesmen after that? A. Yes, sir. Q. Not your salesmen? A. They were company salesmen, naturally, and they paid them a commission."

Mills and Crosby were brought into the company's office by Mrs. McCullough. She testified that she was assisting respondent in organizing a sales force, and

that she introduced Mills and Crosby as prospective salesmen. But there is no evidence that she, on behalf of respondent, entered into any contract with them to sell stock. On the other hand, Phillips, the president of the company, testified that they were introduced as prospective purchasers of stock; that it was not until some time thereafter that he employed them directly for and on behalf of the company; that their commissions were paid by the company. In this, Phillips was corroborated by Mills himself, who testified that he was not at any time in the employ of respondent; that through Phillips he entered into a contract with the company to sell stock; and that he was paid by the company.

Crosby died before the action was commenced. But we find no evidence from which it can reasonably be inferred that he entered into a contract with respondent. The most that respondent can claim is that Crosby was brought in as a prospective salesman by Mrs. McCullough. Phillips testified that he (Crosby) was introduced as a prospective purchaser. And we think circumstances corroborate his testimony. For shortly after Mrs. McCullough brought Crosby in, she and respondent arranged to take him to the mine by automobile. They started, but met with an accident after they had gone a short distance. They were unable to continue the trip. A few days later, Phillips took Crosby to the mine as a prospective purchaser of stock. It was some time after their return that Phillips entered into a sales contract with him on behalf of the company.

It is clear to us that respondent had nothing to do with the employment of Mills and Crosby as salesmen for the company's stock. We are satisfied from the evidence that they were first introduced by Mrs. McCullough as prospective purchasers of stock, and not

as prospective salesmen. In any event, under our construction of the contract, as evidenced by the writing, their subsequent employment by Phillips on behalf of the company did not make them respondent's salesmen nor entitle him to commissions on their sales.

Respondent has interposed a motion to dismiss the appeal on the ground that the findings of fact and conclusions of law are identical with findings and conclusions proposed and presented by appellants. In support of the motion, respondent cites *Jensen v. Sheard,* 49 Wash. 593, 96 Pac. 2; *De Haven v. Tomer,* 170 Wash. 524, 17 P. (2d) 21; *Hamlin v. Case & Case,* 188 Wash. 150, 61 P. (2d) 1287. The theory of the holding in each of these cases is that, in proposing the findings, the appellants invited error, of which they would not be heard to complain. But it cannot be said in this case that appellants invited error by presenting their proposed findings. For into the proposed findings, appellants merely carried the gist of the decision of the trial court as outlined in a memorandum opinion theretofore filed. We do not think it can be said to be invited error for an unsuccessful litigant to present findings in accord with a previously announced decision of the court. The motion is denied.

The cause is remanded, with directions to modify the judgment by awarding respondent only 1,100 shares —the equivalent of the number of shares sold by his admitted "salesman," Mrs. McCullough.

STEINERT, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.