[No. 28578.   Department Two.   April 20, 1942.]

HERBERT FINNEMORE, *Respondent*, v. ALASKA STEAM-
SHIP COMPANY, *Appellant*.[1]

[1]Reported in 124 P. (2d) 956.

*Bogle, Bogle & Gates, Stanley B. Long,* and *Orlo B. Kellogg,* for appellant.

*Maslan & Maslan,* for respondent.

JEFFERS, J.—This action was instituted in the superior court for King county, by Herbert Finnemore, to recover, from the Alaska Steamship Company, damages for personal injuries alleged to have been received by plaintiff through defendant's negligence. No statement of facts or bill of exceptions has been certified to this court, and we have before us only the transcript of the record. The case was tried to the court without a jury, and after the hearing the court made and entered findings of fact, conclusions of law, and judgment.

There being no statement of facts before us, we accept as the facts in the case the findings of fact made by the trial court, which are as follows:

"2. That the defendant, Alaska Steamship Company, a corporation, is in the business of conveying passengers and freight by water from Seattle to ports in Alaska and return. That in pursuance of the conduct of the business of the defendant the defendant owns and operates the steamship known as the SS COLUMBIA.

"3. That on or about May 28, 1940 the plaintiff, Herbert Finnemore, had obtained employment as a waiter and room steward on said SS COLUMBIA and sailed on said vessel to Alaska and return, having made six round trips thereon prior to the time of plaintiff's accident, hereinafter more fully mentioned. That plaintiff, Herbert Finnemore, was an experienced seaman, waiter and room steward, having been employed in such capacity for a period of more than twenty years on board vessels of the Alaska Steamship Company and other vessels on the Pacific coast. That on

August 29, 1940, the said SS COLUMBIA returned from its voyage to Alaska and docked at Pier 2, Seattle, the plaintiff being at that time employed as a waiter and room steward on said vessel.

"4. That as a part of his duties as a waiter and room steward on said vessel it was necessary for the plaintiff to carry passengers' baggage from their respective state rooms on the vessel to the dock. That at about 2:00 o'clock P. M. on the 29th day of August, 1940, the plaintiff was engaged in carrying some baggage belonging to a passenger on said vessel down one of two gangplanks which extended from the ship to the dock at said Pier 2. That said baggage consisted of a hand trunk, which plaintiff carried in his right hand, a suitcase, which he carried in his left hand, and a small package or brief case, which he carried under one arm. That the angle of descent of said gangplank with the dock was approximately thirty degrees or less. That said gangplank was *neither defective* in design, *construction* or *condition, nor was the angle of descent thereof in any way improper under the circumstances then existing.*

"5. That at said time passengers and room stewards, including this plaintiff, were proceeding down said gangplank *slowly and in single file.* That plaintiff, carrying the baggage hereinbefore mentioned, was proceeding down said gangplank immediately behind a lady passenger of the age of approximately fifty years; that immediately behind the plaintiff was proceeding another room steward by the name of Howard, who was also carrying passengers' baggage; that behind the said Howard, and at a distance of approximately six feet, was proceeding another room steward likewise carrying passengers' baggage. That said lady passenger immediately ahead of the plaintiff *hesitated, or possibly stumbled,* requiring the plaintiff *to instantly stop to avoid striking the said lady passenger* causing the injuries hereinafter mentioned. *That the plaintiff was not struck on the leg or elsewhere by the waiter immediately following him, or otherwise, nor did he strike the lady passenger immediately preceding him.* That the line of persons proceeding over said gangplank, of which plaintiff was one, *was pro-*

*ceeding slowly without confusion or pushing. That plaintiff at said time was neither pushed nor shoved,* but simply stopped suddenly upon observing the hesitation or stopping of the lady passenger immediately preceding him.

"6. That as the result of plaintiff's sudden stop on the gangway as aforementioned plaintiff sustained a torn or ruptured soleus muscle. That as the result of said injury the plaintiff was confined to the hospital in a cast up to his thigh for a period of three weeks, and thereafter when out of the hospital was required to wear a cast and use crutches or a cane for an additional period of two weeks.

"7. That at the time of the injury plaintiff was earning $300.00 per month at his occupation on said SS COLUMBIA, including gratuities or tips. That said SS COLUMBIA continued in operation for another month subsequent to plaintiff's injury, during which time the plaintiff would have earned said sum of $300.00.

"That the plaintiff has been damaged in the said sum of $300.00 for loss of earnings, less the amount of $14.00 maintenance paid to him during the last week in September, 1940, making a total of $286.00 damages for loss of earnings.

"8. That in addition thereto plaintiff as the result of said injuries suffered pain, for which he is entitled to an additional sum of $500.00, or a total damage as the result of said injuries in the amount of $786.00." (Italics ours.)

From the foregoing findings of fact, the court concluded:

"1. That the defendant was negligent in allowing the passengers and room stewards as members of the crew of said vessel to leave the ship over said gangway in single file and in close proximity to each other with the result that there was insufficient space on the gangway to enable the plaintiff to stop properly, and that said insufficient space on the gangway was due to the fact that individuals were allowed to board the gangway too rapidly.

"2. That plaintiff is entitled to judgment against the defendant, Alaska Steamship Company, a corporation, in the sum of $786.00, together with plaintiff's costs and disbursements lawfully taxable in this cause."

Judgment was entered in accordance with the conclusions of law. Defendant made a motion for judgment notwithstanding the oral opinion of the court, and in the alternative for new trial. These motions were denied. Defendant has appealed from the judgment entered July 18, 1941.

Appellant assigns error upon the making and entry of the conclusion of law that appellant was negligent, upon the ground that such conclusion is not justified by the findings of fact. On the merits, this is the only question raised.

At the outset, we are met with a motion made by respondent to dismiss the appeal, on the ground that any error there may be in the conclusion that appellant was negligent is error invited by appellant, because the attorneys for appellant prepared, proposed, and presented the findings of fact and conclusions of law signed by the trial court. In support of this contention, respondent cites *Jensen v. Sheard,* 49 Wash. 593, 96 Pac. 2; *DeHaven v. Tomer,* 170 Wash. 524, 17 P. (2d) 21; and *Hamlin v. Case & Case,* 188 Wash. 150, 61 P. (2d) 1287, as authority for the proposition that "a party will not be heard to complain of invited error or of rulings made at his request." *Jensen v. Sheard, supra.*

It seems to us that respondent has misconceived the application of this rule. There being no statement of facts before us, we do not have the oral or memorandum decision of the trial court, but it does appear from the supplemental transcript that the trial court, on July 2, 1941, at the conclusion of the trial, found for plaintiff. The findings of fact and conclusions of law

were signed by the trial judge on July 18, 1941. This is an action based upon the claimed negligence of appellant, and it seems to us that, when the court on July 2nd found for respondent, such finding was necessarily a finding that appellant was negligent. It therefore appears from the record that the conclusions of law presented by counsel for appellant did not invite the trial court to commit error; if there was error, the trial court had already made that error by finding for respondent, and the preparation by appellant of conclusions of law conforming to the judgment which the trial court had indicated would be entered, would not deprive appellant of the right to claim error based on the entry of the conclusions of law presented.

This case, in our opinion, falls within the rule announced in *Hughes v. Boundary Gold Placers, Inc.,* 193 Wash. 564, 76 P. (2d) 611, that:

"We do not think it can be said to be invited error for an unsuccessful litigant to present findings in accord with a previously announced decision of the court."

In the cited case, it is true the court had previously filed a memorandum opinion, which this court considered in determining whether or not there was invited error on the part of the one presenting the proposed findings, while in the instant case we have only the minute entry hereinbefore referred to. However, that minute entry, in our opinion, clearly indicated that the court had concluded appellant was negligent, and under such a situation it is not invited error to present conclusions of law in accordance with the previously announced decision of the court. The motion to dismiss will therefore be denied.

On the merits of this appeal, we are of the opinion that appellant should prevail. Respondent's theory seems to be that appellant was negligent in per-

mitting the passengers and crew members to pass down the gangway in such close proximity one to the other that there was insufficient space on the gangway to enable respondent to stop properly, when the lady ahead of him stopped or stumbled. However, the facts found by the trial court refute any possible inference of confusion, haste, jostling, or crowding of either passengers or crew members as they were proceeding down the gangplank just prior to respondent's injury.

We have carefully examined the findings of fact, and we have been unable to find any facts which would justify a conclusion that appellant was negligent, under the law applicable to this case, and to which we shall later refer.

The facts as found by the trial court, boiled down, are that respondent and others were proceeding down the gangway slowly, in single file, and without confusion or pushing; that the gangway was not defective in design or construction, nor was its angle of descent in any way improper; that respondent was neither pushed, shoved, nor struck, nor did he come in contact with any person or object; that he simply stopped suddenly to avoid striking a lady passenger immediately preceding him, whom he had observed to hesitate or stop.

This action was brought under the Jones act (46 U. S. C. A., § 688), which provides, in part, that any seaman who shall suffer personal injury in the course of his employment, may, at his option, maintain an action for damages at law for such injury. In order to maintain an action for damages under this section, negligence must be shown, and the burden of establishing such negligence rests upon the plaintiff. *Pittsburgh S. S. Co. v. Palo*, 64 F. (2d) 198; The Richelieu, 1928 A. M. C. 1143, at 1164-1165. It is also

the well-established rule that no act or omission of the ship owner may be considered negligent, unless the danger of injury was reasonably foreseeable. It is stated in the *Pittsburgh* case, *supra*:

"But we think that the court committed a more fundamental error in not directing a verdict for the defendant for want of substantial evidence of negligence in respect of both causes of action. In neither were facts shown which should lead the defendant to anticipate the danger of injury to its seamen by virtue of the existing condition of the ship's appliances. Whether or not the fact that injury of some sort might reasonably have been foreseen bears a proper part in the application of the doctrine of proximate cause (see *Johnson v. Kosmos Portland Cement Co.* (C. C. A.) 64 F. (2d) 193, and *Smith v. Lampe* (C. C. A.) 64 F. (2d) 201, decided at this session), it is now firmly established that no act or omission may be considered negligent, unless the danger of injury was reasonably foreseeable. In *Lincoln Gas & Electric Co. v. Thomas,* 74 Neb. 257, 260, 104 N. W. 153, 154, the court thus expressed the same thought: 'It is of the essence of actionable negligence that the party charged should have knowledge that the act complained of was such an act of omission or commission as might, within the domain of probability, cause some such an injury as that complained of.' In *Hope v. Fall Brook Coal Co.,* 3 App. Div. 70, 75, 38 N. Y. S. 1040, 1043, the court says: 'The circumstances necessary to be known before the liability for the consequence of an act or omission will be imposed must be such as would lead a prudent man to apprehend danger.' "

It is stated in *Cortes v. Baltimore Insular Line,* 66 F. (2d) 526, that:

"The causal connection between the defendant's breach of duty and the resulting injury or death must not be left to mere conjecture."

■■ It is admitted by all parties hereto that, while a carrier owes to a passenger on a conveyance itself

the highest degree of care consistent with the practical operation of its system, the duty it owes to a passenger on a station platform or approach is only that of "reasonable care." And it is further admitted by respondent that the cases cited by him are based upon the rule of reasonable care.

We desire to quote to some considerable extent from the case of *Seckler v. Pennsylvania R. Co.,* 113 N. J. L. 299, 174 Atl. 501, not only because of its statement of the rule relative to anticipated danger, but because the cited case, in which there was no crowding or pushing of the prospective passenger, clearly distinguishes between such cases and the cases cited by respondent, to which we shall later refer.

The facts in the cited case are undisputed, and show that the plaintiff, who resided in Irvington and was engaged in business in New York, had used the tube trains daily for a period of about three years prior to the accident, which occurred at about 8:10 o'clock. It was her custom to board the train each day about this time. It also appears that between eight and nine o'clock in the morning, and five and six in the evening, a greater number of passengers went to and from the trains than at any other time, and those periods are referred to as "rush hours." On the morning in question, as the plaintiff was about to enter the station doorway, the door, which swung outward, was thrown open by persons leaving the station, causing it to strike plaintiff's right knee and injure her. At the close of the entire case, the court directed a verdict for the defendants. Plaintiff urged a reversal, on the ground that the uncontradicted facts would support a finding by the jury that the defendant failed to use reasonable care to provide a safe entrance to the station for its passengers, contending, among other things, that defendant should have provided guards to control the

crowds passing through the entrance. The opinion states:

"While there is always the possibility that passengers in railroad stations might be injured by some careless or wanton act of a fellow passenger or stranger, it does not necessarily follow that the railroad company is responsible, unless such act should have been reasonably anticipated. There is nothing in the evidence which would justify a jury in finding that the defendant ought to have anticipated the accident in question, or that a like occurrence had ever happened. The condition which always existed at the 'rush hour,' *was as obvious to the plaintiff*, as to the company, as she had been accustomed to entering the station every working day, during the 'rush hour,' for a period of three years. [In the instant case the facts show that respondent had, for twenty years, been doing the work in which he was engaged.] She does not refer to any incident during that time, which would suggest to a prudent person, that the type of entrance, or the manner of maintaining it, was in any way dangerous. [In the instant case it does not appear that any seaman or passenger had ever been injured in departing from the ship, down the gangplank, before the accident in question.] It does not appear that there was any disorder or pushing by the persons leaving through the Saybrook entrance, or that after she had fallen, the crowd was such that she was trampled upon, or otherwise injured by it. There was not an unusual number of persons entering and leaving the station, considering the time of day when the accident occurred, and we cannot see how the failure to furnish doorkeepers or attendants, in any way contributed to the happening." (Italics ours.)

In *Dorcey v. Milwaukee Electric R. & Light Co.*, 186 Wis. 590, 203 N. W. 327, the court stated:

"Before there can be negligence, there must be a breach of duty owing by the person against whom the claim of negligence is made. It is not claimed that the defendant company in any way breached its duty to furnish a suitable vehicle for transportation. It is not

claimed that the steps and floor or any part of the equipment of the street car upon which plaintiff was riding were in any way defective."

See, also, *Williams v. New York Rapid Transit Corp.,* 272 N. Y. 366, 6 N. E. (2d) 58.

It seems to us the facts as found by the trial court in the instant case present a much stronger case in favor of the carrier than did the facts in the cited cases. There is nothing in the facts found by the trial court, from which it could ever be inferred that the carrier should have contemplated that an injury might result to a passenger or one of its seamen, by permitting such person to proceed down the gangway as the facts show respondent and others were proceeding.

It certainly cannot be deemed reasonably foreseeable by appellant that respondent, a man of twenty years experience in work of this character, would place himself in a position of danger by approaching too close to the person proceeding down the gangway immediately ahead of him. We are satisfied that the facts found by the trial court do not establish negligence on the part of appellant, and that the trial court erred in so concluding.

Appellant, on page twenty-one of its brief, states: "Respondent was a very experienced employee, and assumed the risk normally incident to his calling," citing *Kuljis v. Xitco,* 8 Wn. (2d) 606, 113 P. (2d) 26. Appellant did not plead the defense of "assumption of risk," and respondent objects to any consideration being given to this defense. In view of the conclusions hereinbefore reached by us, which we think determinative of this case, we do not deem it necessary to pass upon the question of whether or not respondent assumed the risk normally incident to his calling.

Respondent has cited a good many cases to sustain his contention that appellant was negligent, among

them being *Coyle v. Philadelphia & R. Co.*, 256 Pa. 496, 100 Atl. 1005; *Grubb v. Kansas City Rys. Co.*, 207 Mo. App. 16, 230 S. W. 675; *Kelley v. Boston Elevated R.*, 210 Mass. 454, 96 N. E. 1031; and *Pennsylvania R. Co. v. Hoover*, 142 Md. 251, 120 Atl. 526. We think all of the cited cases recognize the rule heretofore announced, that a carrier is liable only where the danger should have been reasonably foreseeable. The cited cases differ materially on the facts, in that in all of them there were large crowds allowed to congregate on a station platform or car platform, and the one bringing the suit was injured by being pushed or crowded into a place of danger. The theory of the decisions in the cited cases was that the carrier should have anticipated the danger to passengers or prospective passengers from overcrowding. For the reasons stated, the authorities cited by respondent are not controlling herein.

The judgment of the trial court is reversed, and remanded with instructions to dismiss the action.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.