STATE OF NORTH DAKOTA, Respondent, v. DAVID H. UGLAND, Appellant.

(187 N. W. 237)

Criminal Law — verdict based on substantial evidence is binding on Supreme Court.

    1. The verdict of the jury, based upon substantial competent evidence, is binding on the court. Following State v. Cray 31 N. D. 67, 153 N. W. 425.

Embezzlement — conditions as to "possession" of property defined.

    2. To constitute the crime of embezzlement, the possession of the property appropriated must have been, by the owner or for or in his behalf, intrusted to the accused so that a relation of trust and confidence relative to the thing appropriated is created, and it must appear that the accused had access to or possession of the property embezzled by virtue of such relation of trust and confidence.

Embezzlement-Larceny — taking of grain by party hired at monthly salary to assist in handling held larceny.

    3. The owner of grain hired accused on a monthly salary to assist in harvesting, threshing, caring for and transporting said grain to market. *Held,* that the possession of said grain, under such circumstances, remains in the owner thereof; and if accused having access to and custody of the grain, for such purposes, stealthily takes and carries away the same, or a portion thereof, without the consent of the owner, and stealthily converts the same to his own use he takes it from the possession of the owner, and is properly informed against for the larceny thereof.

Opinion filed Mar. 6. 1922.

Appeal from the District court of Ramsey county, N. D., *Buttz, J.*

David H. Ugland was convicted of the crime of grand larceny and appeals.

Affirmed.

*Palda & Aaker,* for appellant.

Embezzlement under § 9929 C. L. 1913 is "The fraudulent appropriation of property by a person to whom it has been intrusted."

To constitute larceny there must be a trespass in the original taking.

One who has acquired possession bona fide cannot thereafter commit larceny of the thing so possessed.   25 Cyc. 22.

On the same principle, where an owner of property assigned it to another but retained possession and afterwards converted it to his own use, this was not larceny.   25 Cyc. 493.

It has ever been held that the same rules with reference to the property embezzled, and the ownership thereof, and the fraudulent intent to convert the property apply in cases of embezzlement that apply in cases of larceny.   On this point Wharton says: "Unless the pleader is relieved from this exactness by special statute, the goods and ownership must be set out and proved with the same exact completeness as in larceny."   See Wharton Crim. Law 1044; See also State v. Lyon, 45 N. J. Law 272; Livingstone v. State, 16 Tex. App. 652; State v. Collins, 4 N. D. 433; 15 Cyc. 491; State v. Lindley, (S. D.) 83 N. W. 257.

Under an indictment for larceny one cannot at common law be found guilty of a different offense such as embezzlement.   25 Cyc. 104.

*Sveinbjorn Johnson,* Attorney General, (*Spalding* & *Shure* of Counsel), for respondent.

"In the case of State v. Vincent for grand larceny, the accused in the indictment was charged with stealing the property of one D. H. Murphy,—the proof established the ownership of property in South Dakota Cattle Company, Murphy being only foreman for corporation, and that he had no interest or lien upon the property and was only hired by the month, Held, the indictment sufficient.   State v. Vincent, 16 S. D. 62, 91 N. W. 347.

In the case of Ward v. People, 3 Hill 395, the accused was indicted for stealing the property of one Flagg,—proof established the fact that Flagg himself had stolen the property from the true owner.   It was *held* by the New York Court *"that the possession of the property in the thief was sufficient to make it the subject of larceny."*

In Sharp v. State, 85 N. W. 39, the information alleged the goods stolen were the property of the railway company.   The evidence established a special ownership only, the goods being stolen from the railway company while in transit.   *Held* sufficient to sustain a conviction for larceny.

"Wherein a prosecution for stealing hogs, there was no evidence that defendant had any right to property alleged to have been stolen, failure

to establish ownership in persons alleged to be owners in indictment is not fatal, where there was evidence tending to identify property as being property described in indictment. People v. Bolanger, 71 Cal. 17, 11 Pac. 799.

"Proof that person alleged to be owner had special property or that he held it to do some act upon it or for purpose of carriage or *in trust* for the benefit of another, would be sufficient to support allegation of ownership in indictment." People v. Nelson, 56 Cal. 77.

"Fact that property stolen was in possession of person alleged to be owner at time of taking sufficient to establish ownership." People v. David, 97 Cal. 194; People v. Oldham, 111 Cal. 652, 44 Pac. 312.

It is proper in a prosecution for larceny to describe the property as that of the real owner or of the person in possession and it may be alleged to be the property of one who is in possession as bailee, agent, *trustee,* executor or administrator, and such *bailee, trustee, etc., may be alleged to be the owner thereof by name without describing his trust connection.* State v. Tillett, (Ind.) 89 N. E. 589; Wharton's Crim. Law. 10th ed. 750; McLain's Criminal Law, 546, 22 Cyc. 462; United States v. Barlow, 24 Fed. Cas. 1007; State v. Summerville, 21 Me. 14, 38 Am. Dec. 248; State v. Stanley, 48 Iowa, 221; Edison v. State 47 N. E. 625.

It is well settled that the ownership may be laid either in the real owner or in the person in whose possession the property was at the time of the theft as bailee, agent, *trustee,* executor or administrator. 17 R. C. L. 66; 17 R. C. L. 68; Hildebrand v. People, 56 N. Y. 394, 15 Amer. Rep. 435; Wharton's Crim. Procedure, 10th ed., 861.

A person obtaining possession of money for a pretended purpose of betting on a sham race, and converting it, has been held guilty of larceny. State v. Ryan, Ore. 1 L. R. A. (N..S.) 862.

If the defendant, with a design to steal the property, obtains possession of it by fraud, the taking of it is larceny. Gillett Crim. Law, 2nd ed. 540; Crum v. State, 148 Ind. 401, 47 N. E. 833.

Where any person, whether servant or not, has the bare charge or care of another's effects, the legal possession remaining in the owner, the party is guilty of larceny who fraudulently converts it to his own use. Johan Williams v. State of Ind. 75 N. E. 875, 2 L. R. A. (N. S.) 248.

PUGH, J. Defendant was convicted of the crime of grand larceny, and, from the judgment entered on the verdict, he appeals to this court.

August 10, 1918, and October 12, 1918, to satisfy creditors and avoid bankruptcy proceedings, the defendant executed certain agreements, whereby for the benefit of his creditors, he assigned and delivered to W. H. Shure, as trustee, all his property, both real and personal (excepting household goods and homestead). The real property consisted of upwards of 13,000 acres of land.

Surrounded by lands owned by defendant was a quarter section of land formerly owned by B. G. Johnson, against which was a second mortgage. The mortgagee therein sold the same to the defendant, the assignment running to the bank of which Ugland was then cashier. The mortgage was foreclosed, the land sold, and sheriff's certificate issued in the name of the bank February 2, 1918, and prior to the assignment for the benefit of creditors made to Shure. Thereafter and prior to the assignment to Shure, defendant entered into an agreement with Johnson whereby defendant agreed to farm said quarter section of land during the farming season of 1918 and to apply one-third of the crop raised and harvested and threshed from the land, that being Johnson's share of the crop, after deducting one-third of the threshing bill, to the payment of the sheriff's certificate aforesaid; the remaining two-thirds to be defendant's share of the crop. A crop of flax was raised on the land, and it is a portion of this crop, to wit, 112 bushels thereof, which is the subject of the alleged larceny. After the execution of the trust agreements, the trustee, Shure, hired defendant in August, 1918, and agreed to pay him $100 per month wages, to assist in caring for the crops.

During the threshing of the crops on the so-called Johnson land, in the temporary absence of the trustee, Shure, and, without the knowledge of Johnson or the trustee, Shure, defendant directed one of the workmen, who was hauling grain from the threshing machine, to haul a portion of the flax from the machine and place it in a granary situated some distance from the Johnson land, but which granary was situated on land which defendant had theretofore transferred to Shure, as trustee, as aforesaid. One hundred twelve bushels of said flax was placed in said granary, where it was permitted to remain two weeks. The remainder of the flax on the Johnson land was hauled to an elevator at Knox and there placed in a special bin, and report thereof given by de-

fendant to Shure. Shure had given directions that all flax threshed from the land which defendant had transferred to him, including the Johnson quarter, be hauled to an elevator at Knox and placed in special bin. The flax placed in the granary, as aforesaid, to wit, 112 bushels, was thereafter, by direction of defendant, without the knowledge of Shure or Johnson, hauled to the St. Anthony & Dakota Elevator at Pleasant Lake, N. D., by one Weaver, an employe of the trustee, Shure, and there stored in the name of one E. N. Dokken of Knox, N. D., with whom defendant had had business dealings for many years. About six days later it was sold by, or by direction of, the defendant without the knowledge of Shure or Johnson. The draft or check issued in payment therefor was delivered to defendant and by him handed to Dokken with the request that he indorse the same. Dokken indorsed it by writing his name on the back thereof and handed it back to the defendant, who received the money for it.

The evidence further shows that during absences of the trustee, Shure, from the farm, defendant gave instructions to the workmen.

The grounds and reasons which defendant urges for a reversal of the judgment are:

(a) The evidence is insufficient to justify the verdict, in that he alleges there was no proof of ownership in the trustee of the flax taken by defendant; and

(b) The offense, if any, for which the defendant might have been prosecuted, under the facts in the case, was embezzlement, not larceny.

1. It was the contention of the defendant that the flax in question was the property of Johnson. There is no contention, by either party, that the bank, in whose name the assignment of the mortgage was, and to which the sheriff's certificate was later issued, had any interest in this flax. Johnson's right to possession of the flax depends upon the terms of his agreement with defendant, and the question of whether the verdict of the jury is based upon substantial, competent testimony, in turn, rests upon the testimony relative to the agreement between the defendant and Johnson, and, is in brief, as follows: Shure testified as a witness in the case that defendant informed him that he had agreed with Johnson to farm this land during the season of 1918, sow the cultivated land to flax, and in case of redemption from the foreclosure was to get a share of the crop. He further testifies that Johnson was present during all the time this flax was being threshed; that he knew it

was being threshed; that he knew it was being delivered to the elevator at Knox. The record is silent as to whether Johnson made any objection thereto.

The agreement between Johnson and defendant is further evidenced by letter written by defendant to Johnson, care of Attorney Siver Serumgard, in which he says:

"Mr. J. E. McCarthy has just showed me your letter of the 7th inst. regarding renting your land foreclosed on by Security Bank of Knox, and I accept your terms stated therein and will apply one-third of the proceeds of the flax crop after payment of one-third of the thresh bill by you on the above foreclosure."

The defendant testified the agreement with Johnson was to the effect that, if there was not sufficient money derived from the one-third of the crop to take up the certificate, then the proceeds of such one-third were to be paid over to Mr. Johnson. Neither the state nor defendant called Johnson as a witness.

From this evidence, somewhat conflicting, the jury might reasonably find, as they did find, in arriving at their verdict, that Shure was the owner, as trustee, of the flax in question, or that as such trustee he was entitled to the possession thereof.

The question of ownership or right to possession of the flax was fairly submitted to the jury by the instructions of the trial court. In his instructions the court said:

"It is the claim of Mr. Ugland that he took this property, not intending to steal it, but that he took, as he claims, in good faith; on behalf of Mr. Johnson, or in order to protect the rights of Mr. Johnson, as he claims; and, in passing on the guilt or innocence of the defendant, you shall carefully consider the claims of the defendant in that respect, as well as all other claims he makes in this lawsuit."

That the question of the ownership or right to possession of this flax was actually considered by the jury is further shown by the request of the jury, after retiring, for further instructions concerning this phase of the case. The jury was brought into court, and, after a colloquy between members thereof and the judge, the following additional instruction was given:

"To make the taking larceny, the grain must either have been the property of Mr. Shure in his capacity as trustee, or else in his possession as trustee of the Ugland estate under the farming agreement of

Ugland with Johnson, and the taking must have been by Mr. Ugland with the intent and purpose in Ugland's mind to steal it. If Mr. Ugland took it from the Shure's possession in good faith and with the intent to protect Johnson's interest, he would not be guilty of larceny, etc."

No complaint is made with reference to these instructions.

The finding of the jury is binding on this court when based upon substantial, competent evidence that, in any reasonable view thereof which the jury has the right to take, justifies the verdict. State v. Cray, 31 N. D. 67, 153 N. W. 425; State v. Wheeler, 38 N. D. 456, 165 N. W. 574; State v. Burcham (N. D.) 176 N. W. 657; State v. Papernak (S. D.) 181 N. W. 955; Fink v. State, 173 Wis. 264, 180 N. W. 812.

2. The defendant insists, secondly, that if the evidence shows the commission of a crime by him in connection with this flax, is that of embezzlement, not larceny, and for that reason the judgment should be reversed and he be discharged. Section 9913, C. L. 1913, defines "larceny" as "the taking of personal property accomplished by fraud or stealth, with intent to deprive the owner thereof." Section 9929, C. L., defines "embezzlement" as "the fraudulent appropriation of property by a person to whom it has been intrusted."

The distinction between these two crimes is at once apparent, and relates chiefly to the manner of acquiring the possession of the property stolen or appropriated. In larceny there must appear the trespass and the appropriation of the property; while in embezzlement there is a fraudulent conversion after its possession has been intrusted to the accused, or after it has lawfully come into the possession of the accused by virtue of his employment with the owner thereof. It is the essence of the crime of embezzlement that the misappropriation be of property intrusted to the defendant.

The word "intrusted" means something more than naked possession or custody of or access to the property appropriated. Webster's New Int. Dic. defines it: To confer a trust upon; to deliver to another something in trust, or to commit something to another with a certain confidence regarding his care, use or disposal of it. See, also, State v. Collins, 4 N. D. 433, 61 N. W. 467; People v. Ehle, 273 Ill. 424, 112 N. E. 970; Colip v. State, 153 Ind. 584, 55 N. E. 740, 74 Am. St. Rep. 322; People v. Dougherty, 143 Cal. 593, 77 Pac. 466.

Something more than mere physical access or opportunity to ap-

proach or take the property is intended by the statute in order to make the appropriation embezzlement. There must be a relation of trust and confidence reposed in the recipient of the thing appropriated, and it must be by virtue of such relation of trust and confidence that the accused has access to or possession or control of the property embezzled.

"There is a well-settled distinction in law between the possession of goods and the mere charge or custody and this distinction plays an important part in the law of larceny. The owner of goods may deliver them to another in such manner or under such circumstances as to give the other the bare cusody without changing the possession in the eye of the law. The possession in such case remains constructively in the owner, and if the person having the custody converts the goods to his own use, with felonious intent, he takes them from the constructive possession of the owner, and commits a trespass and larceny." Clark and Marshall on the law of Crimes, pp. 451, 455; Chanock v. United States, 267 Fed. 612, 50 App. D. C. 54, 11 A. L. R. 799, and note to the case; note to 888 Am. St. Rep. 566; 17 R. C. L. 10; R. C. L. 9; R. C. L. 1273; 25 Cyc. 20; 20 C. J. 418; 13 A. L. R. 314, note.

Defendant insists that he was agent of the trustee, and that as such he was intrusted with, or had in his control, the crops aforesaid, for the use of the trustee, and that therefore, under § 9933, C. L., the crime committed, if a crime was committed, was embezzlement, not larceny.

In our opinion the evidence in this case does not establish the proposition that the flax in question, or, indeed, any of the crops raised on the land transferred by the defendant to Shure, as trustee, was placed in the "possession" of the defendant and "intrusted" to him by Shure, within the legal contemplation of those terms. In other words, we are of the opinion that there is sufficient legal evidence from which the jury could reasonably find that the defendant did take, steal, and carry away said flax, by fraud and stealth, with the intent then and there to deprive the owner thereof. As we read the record, the uncontradicted evidence is that Shure took possession of all the real estate and personal property formerly belonging to defendant and wife, including the Johnson land. The defendant was employed by the trustee to assist in harvesting, caring for, and threshing of the grain, and delivery thereof to the elevator designated by the trustee. The defendant, it is true, looked up prices, elevators, and had the elevator buy portions of the grain; but this was all done under the direction of the trustee, and as

the servant of the trustee. When grain was delivered to the elevator, storage tickets were issued in the name of Shure; when sales were made, the checks or drafts given by the elevator agent in payment of such sales were made out payable to Shure; the 112 bushels of flax taken and sold by defendant when threshed was placed in Shure's granary; said flax was in his possession while in the granary; it did not leave his possession until the defendant took it in the manner hereinbefore recited. Shure did not, by any act of his, divest himself of such possesion.

Following the well-established principles of law herein set forth, it must be held that the defendant in taking and carrying away said flax, to an elevator other than that designated by the master, in storing it in the name of Dokken, and selling and disposing of it stealthily, committed a trespass, and he was properly charged with the larceny of the grain.

The judgment of the district court is affirmed.

GRACE, C. J., and CHRISTIANSON, and BIRDZELL, JJ., concur.

ROBINSON, J. (specially concurring). In March, 1920, in the district court of Ramsey county, before Hon. C. W. Buttz, presiding judge, defendant and appellant was convicted of the crime of grand larceny and sentenced to imprisonment in the state's prison for the term of one year. The information charges that on November 2, 1918, in Benson county, the defendant did commit the crime of grand larceny; that he did then and there feloniously take, steal, and carry away by fraud and stealth 112 bushels of flax of the value of $406.58, the property of W. H. Shure, with intent to deprive the owner thereof. Appellant claims that the evidence does not justify the verdict.

(1) That there is no evidence that the complaining witness, W. H. Shure, had any title to the flax.

(2) That the flax was the property of one Johnson.

(3) That defendant has in his possession the proceeds of the flax and is able and willing to pay the same to Johnson or to Shure, as their right may be determined in a civil action.

(4) That the offense alleged was in the nature of embezzlement, and not larceny.

The information avers the facts constituting the offense which is

justly named "grand larceny." If it please the defendant, he may call it "grand embezzlement." The name is of little consequence, as the offenses are alike and the penalty for either offense is precisely the same. The evidence shows that defendant committed the offense as alleged in the information. He became insolvent and to avoid bankruptcy proceedings and to satisfy claims of his creditors he conveyed to W. H. Shure his interest in about 13,000 acres of land with the crops thereon, and, with the exception of his homestead, he conveyed all his other property of every name and nature. And then he went with Shure and pointed out the property. He pointed out a quarter section known as the Johnson land, which the defendant held under a cropping lease and on which he had 100 acres of growing flax. Shure took possession of all the property. He paid for the harvesting and for the threshing of the flax. He hired defendant at $100 a month to look after the harvesting and threshing of the crops on the land. In time defendant gave Shure a statement showing 1,661 bushels of flax threshed and put in a special bin in the elevator at Knox. It included 770.42 bushels of flax grown and threshed on the Johnson land; but it did not include 112 bushels of the flax which defendant had caused Harvey Weaver to carry away from the Johnson land and put in his own granary and keep for two weeks and then to haul and deliver to the St. Anthony elevator at Pleasant Lake and to the order of defendant. Then, on November 13, 1918, defendant called at the elevator and obtained for the 112 bushels of flax a check for $406.58, payable to the order of E. N. Dokken, a merchant at Pleasant Lake, who knew nothing of the flax and who had no interest in it. Defendant took the check to Dokken and asked him to indorse it, which he did, and returned it to defendant asking no questions. Then defendant cashed the check and gave no account of it. The whole affair was done so well and stealthily that Shure did not learn of it for over a year. The party who hauled the flax to Pleasant Lake elevator was given a jag for himself. He did not tell or make a fuss. No person told. No person knew anything of it only a mere circumstance—a link in the chain. The record does not show how Shure came to discover it; but sure he did it. The discovery makes one think of the powerful Sampson and his riddle. He wedded a daughter of the Philistines and at the marriage feast put forth a riddle to 30 of his Philistine guests. It was this: "Out of the eater came forth meat and out of the strong came forth sweetness." Though the riddle was deep and obscure, in due time the correct answer was given thus:

"What is sweeter than honey and what is stronger than a lion?" The answer of Sampson was: "If ye had not plowed with my heifer, ye had not found out my riddle." With the consent, of Ugland, when in the penitentiary on conviction for embezzlement, Shure obtained for his wife a divorce. Those who cunningly steal flax do not always keep in mind the verse of Robert Burns:

"Go tell the secrets of your breast
When you meet with your bosom crony.
But always keep a something left
You'll never tell to ony."

Concerning the guilt of the defendant there is not a particle of doubt.

BRONSON, J., being disqualified, did not participate.