[No. 24110.   Department Two.   December 19, 1932.]

LEONA DE HAVEN, *as Executrix, Respondent,* v. VICTOR TOMER *et al., Appellants.*[1]

[1]Reported in 17 P. (2d) 21.

*H. D. Moore* and *Ralph H. Higgins,* for appellants.
*Shorett, Shorett & Taylor,* for respondent.

MAIN, J.—This action was brought to recover a money judgment. The trial was to the court without a jury, and during the trial one of the plaintiffs, Mrs. Clementine Empens, died suddenly in the courtroom. Thereupon the case was continued, but not to a specific date. Before the case again came on for trial, the other plaintiff, E. Empens, died, and Leona de Haven, the "executrix of the estates of Clementine Empens and Isador Empens, deceased," was substituted as party plaintiff. Later, the case again came on for trial or the completion of the trial, and resulted in findings of fact from which the court concluded that the plaintiff was entitled to recover. The defendants moved for a new trial, and supported their motion by affidavit of one of their counsel, and the plaintiff resisted the motion by affidavits. The motion being overruled, judgment was entered in favor of the plaintiff and against both defendants in the sum of four hundred dollars, from which the defendants appeal.

The facts essential to be stated are these: The appellant Victor Tomer was a licensed real estate broker, doing business in the city of Seattle, and the appellant Continental Casualty Company was surety upon his bond. E. Empens and Clementine Empens, his wife, owned a ranch near the town of Auburn, in King county. A. J. McDonald and S. A. McDonald, his wife, owned, or were purchasing, property in West Seattle upon a contract. Tomer, representing both parties,

brought them together, and an exchange agreement was entered into. This agreement provided that:

"Said parties of the first part [the McDonalds] hereby authorize the parties of the second part [the Empens] to obtain a first mortgage in the sum of $500 on the property now owned by the parties of the second part, adding it to the balance due said parties, to be secured by a second mortgage."

As to the commission that was to be paid to Tomer, the contract contained this provision:

"The parties shall pay broker's commission for negotiating this transaction at or before the consummation of contract, as follows: first party to Victor Tomer the sum of One Hundred and Sixty ($160) Dollars, and second party to Victor Tomer the sum of One Hundred and Fifty ($150) Dollars, provided that, if either party shall fail to furnish good or acceptable title, or to perform or comply with his part of this contract within the time or manner specified, the aggregate of such commissions shall be paid by the defaulting party immediately after the occurrence of the default, and the other party shall be released from all liability for commission."

The McDonalds assigned the contract upon their property, and delivered it to Tomer to be delivered to the Empens when the transaction was consummated. Tomer undertook to borrow five hundred dollars upon the Empens property, but was not able to secure the loan. He approached Mr. Empens, and told him that the McDonalds were willing to go through with the transaction if two hundred and fifty dollars was paid to them, rather than the five hundred dollars. Mr. Empens did not have the money, but referred Tomer to one of his daughters, from whom the two hundred and fifty dollars was secured. This sum was turned over to Tomer, and there was delivered to him one hundred and fifty dollars, for which he gave the following receipt:

"Received of E. Empens the sum of $150 . . . as commission for sale of property at Auburndale, near Auburn, King Co. Said money is to be returned by the undersigned if the sale is not consummated.

"Victor Tomer."

Tomer did not turn over to the McDonalds the two hundred and fifty dollars, and they at no time, as both of them testified, agreed to accept that sum and go through with the deal.

After the continuance of the trial, as above mentioned, and sometime during the month of December, 1931, Tomer left the state of Washington, and subsequent to that time his whereabouts were not known to his attorneys or either of them. February 11, 1932, the plaintiff, by her attorneys, requested the court to set a date for further hearing; both parties being represented in open court at the time by their respective counsel. The case was, without objection, set for further hearing on March 11, 1932. On this date, the case was continued, upon motion of counsel for the defendants, until March 21, 1932.

On this date, the defendants filed in open court a motion for continuance, supported by affidavit, and this motion was denied. Counsel for the defendants then asked that, owing to the lapse of time between that date and the date from which the trial of the case had been continued, the witnesses be recalled to testify; and this request was denied. At this hearing, no testimony was introduced by either party, and the court entered findings of fact, conclusions and judgment, as above indicated.

It is first contended that the judgment should be reversed because

"There was no proof offered at the trial of the death of the plaintiff, the probate of his will, nor of the substitution of Mrs. de Haven as plaintiff, to support the ninth finding of fact."

A petition for substitution was filed February 10, 1932, and on this date the order substituting Leona de Haven as party plaintiff was entered. So far as the record shows, no notice that the petition would be presented was served upon the opposite party, or either of his attorneys. Finding No. 9, as made by the court, was as follows:

"That on the 5th day of June, 1931, Clementine Empens, the wife of the former plaintiff herein, died; and during the month of September 1931 the former plaintiff E. Empens died; and that on the 9th day of February, 1932, Leona DeHaven, the qualified and acting executrix of the estates of Clementine Empens and E. Empens, deceased, was appointed and is now the substituted plaintiff herein."

The appellants requested a finding as follows:

"That on the 5th day of June, 1931, Clementine Empens, the wife of the former plaintiff herein, died; and during the month of September, 1931, the former plaintiff, E. Empens, died; and that on the 9th day of February, 1932, Leona DeHaven, the qualified and acting executrix of the estates of Clementine Empens and E. Empens, deceased, was appointed and is now the substituted plaintiff herein."

It will be noticed that the finding made and the requested finding are exactly to the same effect, and in much, if not exactly, the same language. One of the counsel for the appellants, in his affidavit filed in support of his motion for new trial, recited the fact that both Mr. and Mrs. Empens had died, and that their wills had not been probated until January 21, 1932.

Even though no notice was given to the appellants or their counsel of the hearing on the application for substitution, as required by the rules of the superior court, it does not follow that the judgment should be reversed for this reason. The appellants, having requested the finding, which is substantially identical

with the finding made by the trial court, are not now in a position to claim that the court erred in making that finding. *Jensen v. Sheard,* 49 Wash. 593, 96 Pac. 2.

■ It is next contended that the court erred (a) in not adjourning the trial to a date certain at the time of the death of Mrs. Empens; (b) in refusing a continuance; and (c) in not requiring the testimony to be retaken. Rem. Comp. Stat., § 66, provides that a court or judicial officer

". . . has power to adjourn any proceeding before it or him from time to time, as may be necessary, unless otherwise expressly provided by law."

At the time the case was continued, the court recited that Mrs. Empens had just died, and that, in view of the excitement prevailing on account of her sudden death, "I will adjourn this case subject to call, there being no objection by either counsel." Subsequent to that time, the appellants made no move to bring the case on for trial, as they had a right to do. The case was continued without objection, and was subject to call. In the ruling complained of, there was no prejudicial error.

■ Neither was there any error in refusing a further continuance when the case was finally called for trial on March 21, 1932. Whether a continuance should have been granted, was a matter largely in the discretion of the trial court, and that discretion will not here be disturbed in the absence of a showing of abuse thereof. *Nye v. Manley,* 69 Wash. 631, 125 Pac. 1009.

The continuance was desired in order that Tomer, one of the parties to the action, might be located, if possible, and be present at the trial. As above recited, he left the jurisdiction of the court in December, 1931, and his whereabouts subsequent to that time have not

been known. It was approximately three months later when the case was disposed of. Tomer had taken with him the two hundred and fifty dollars which he had gotten under the pretense that it would be paid to the McDonalds, and the one hundred and fifty dollar commission. The trial court did not abuse its discretion in refusing a further continuance.

Whether, when there has been a partial trial and, for some reason, it becomes necessary to continue the case to a subsequent date and a long time intervenes, there should be a retaking of the testimony or a complete retrial, rather than a continuance of the trial already had without the retaking of the testimony, is a matter which rests to a considerable extent in the discretion of the trial court. In this case, the date of the continuance was June 5, 1931. August 7th of that year, the trial judge sustained an injury on account of which he was confined in the hospital for many weeks, and did not return to the bench until January 4, 1932.

Whether the testimony should be retaken, depends largely upon the situation presented in the particular case. In this case, the testimony was brief, and the case ultimately turned upon a particular point, and that was, whether Tomer was to secure the five hundred dollar loan. The McDonalds both testified that, without the five hundred dollars, they could not have gone through with the deal. Mr. Empens and one of his daughters testified that Tomer undertook to borrow the money, and that he was unable to do so. Even though a considerable time had elapsed between the time when the testimony was taken at the time the case was first called for trial and the time when it was finally disposed of, there was no error in the refusal of the trial court to require that the testimony be retaken. Cases from other jurisdictions which hold

that the court should declare a mistrial and retake the testimony when a case goes over the particular term, having been partially tried, are not applicable in this jurisdiction, because here there are no terms of the superior court, as such, and the court is continuous in its operation.

It is next contended that the trial court erred in considering the testimony of Mrs. Empens, she having died at the conclusion of her testimony in chief and the appellants thereby being deprived of the right of cross-examination. In answer to this contention, we shall only say that we have entirely disregarded the testimony of Mrs. Empens, and disregarding that testimony does not affect the result.

It is next contended that the court erred in holding that the appellant surety company was liable for the one hundred and fifty dollars commission entrusted to Tomer. Under Rem. 1927 Sup., § 8340-10, a licensed real estate broker is required to give a bond to the effect that he will faithfully account for "all funds entrusted to such real estate broker." Rem. 1927 Sup., § 8340-11, which is the succeeding section, provides that any person who may be damaged by the wrongful conversion

". . . of trust funds by such real estate broker, shall, in addition to other legal remedies, have a right of action in his own name on such bond for all damages not exceeding one thousand dollars ($1,000)."

The question is whether the one hundred and fifty dollars which the Empens turned over to Tomer was entrusted to him within the contemplation of the statute. As above set out, the receipt which was given for this sum expressly provided that the money should be "returned by the undersigned [Tomer] if the same is not consummated." It seems to us that this money was entrusted to Tomer within the contemplation of

the statute, and that a recovery against the bond was proper. One section of the statute uses the word "entrusted" and the other uses the term "trust funds," but the latter, undoubtedly, was intended to include the former. It may be that the one hundred and fifty dollars was not held as a trust fund, strictly speaking, but it was at least entrusted to Tomer, and comes under the statute.

In *Mapes v. Foster*, 38 Wyo. 244, 266 Pac. 109, where the statute is very much the same as the statute of this state, it was said:

"If plaintiff's money were intrusted to the real estate agent in such capacity, and converted to the agent's own use, he and his surety would certainly be liable. It could hardly be a defense for him or his surety that, because he was actually buying for plaintiff his (Foster's) own relinquishment, which he had represented was to come from another, that both principal and surety should be released from repaying the funds so entrusted to him, and which had been misapplied."

■ It is next contended that the McDonalds were ready, willing and able to comply with their part of the exchange agreement, and that the failure to raise the five hundred dollars was due to the fault of the Empens. It is necessary here only to say little in addition to what has already been said. Tomer was the broker who was handling the transaction and conducting the negotiations. The evidence makes it clear that he was the one that had undertaken to raise the five hundred dollars, and that he did not accomplish this result. The McDonalds, as stated, both testified that, without the five hundred dollars, they were not able to go through with the deal.

■ Finally, it is contended that Tomer was entitled to the one hundred and fifty dollars commission, and that the Empens should be charged with the one

hundred and sixty dollars which was to be paid by the McDonalds. This contention is based upon the assumption that the failure to go through with the deal was due to the fault of the Empens in not providing the five hundred dollars. But the facts are against this position. The McDonalds refused to go through with the deal because the five hundred dollars was not paid to them. The failure to raise the five hundred dollars was due to the fact that Tomer could not secure anyone to make the loan. The failure of the transaction to go through not being due to any fault on the part of the Empens, they were not liable for any part of the commission under the express terms of the contract, which recited that, if either party failed to comply with his part of the contract,

"The aggregate of such commission shall be paid by the defaulting party immediately after the occurrence of the default and the other party shall be released from all liability of a commission."

The judgment will be affirmed.

TOLMAN, C. J., BEALS, and STEINERT, JJ., concur.