## Aetna Casualty & Surety Co. et al. v. Salyers et al.

June 25, 1943.

Dysard & Dysard and E. Paul Williams for appellants.

John W. McKenzie and Woods & Stewart for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On April 22, 1941, D. D. Salyers obtained a policy on a secondhand automobile that he had purchased from Troy E. Fairchild, a dealer in automobiles in Ashland, Kentucky, under a conditional sales contract in the usual form. The insurers in the policy were appellants, the Aetna Casualty and Surety Company, and the Automobile Insurance Company, and the insured were D. D. Salyers, the owner of the automobile; Troy E. Fairchild, and the Third National Bank of Ashland, Kentucky, to whom Fairchild had transferred the contract. A number of different risks were assumed in the policy, among which was the loss of or damage to the automobile; but the word "theft" nowhere appears in the policy so far as we have been able to discover, although the broad language of the total coverage of the policy is sufficient to include its loss by theft.

On the day of or shortly following the purchase of the automobile and the obtention of the policy, Salyers voluntarily delivered the possession of it to one John Blue whose home was in Chicago, Illinois, but who was temporarily located in Ashland as an employed superintendent or engineer on the job of constructing the Federal Correctional Institution at Summit, Kentucky, some five or six miles from Ashland, Kentucky. The contractor of that work for the Federal Government was E. H. Marhauper, Jr., Company, located in the same city. Blue went to Ashland perhaps a few days before Salyers

purchased the car and on that day or soon thereafter he applied to Fairchild to rent a car for his use in serving his employer, since the construction work was some distance from Ashland where Blue had procured lodging. Fairchild informed him that he had no cars for rent and was not engaged in that particular business. In the employ of Fairchild was Salyers' father and the latter called Blue's attention to his son's recently purchased car and informed him that he might rent it. The son was called from his place of work and in the conversation between him and Blue the latter proposed to purchase the car at $25 more than Salyers had paid for it but said that he could not agree to complete the purchase without authority from his employer in Chicago, which he proposed to ascertain within a week, Salyers agreed for him to take possession of the car and use it until such authority was obtained. At the end of the week Blue, when approached, stated that he.had not yet heard from his employer and then paid to Salyers $10 with the agreement, as testified to by Salyers, that the amount might be credited on the purchase price of the car if it was eventually bought, but if not, then it could be devoted to rental for the use of the car. But whatever might be the final outcome of the transaction, the possession of the car was voluntarily and willingly turned over to Blue by its owner, one of the insured in the policy sued on. Blue never made any other payments, though he continued in the service of his employer for between four and six weeks after obtaining its possession from the owner, and in that use he drove around over the streets of Ashland, in the open, as well as making trips backwards and forwards between Ashland and the construction project that he was superintending as engineer. In the meantime he went on a drunken spree with other acquaintances and companions and it is intimated that his employer was threatening to or would discharge him, following which he disappeared from Ashland, as did also the insured automobile. Later he was located as an employe by the Government in some federal work in the Panama Zone, but there is no evidence other than strong inference that he carried the car away with him or as to what did become of it.

After his disappearance this action was filed by appellees and plaintiffs below in the Boyd circuit court against appellants and defendants below, to recover for the loss of the insured car, charging in the petition that

it was stolen and that it was of the value of $375, for which amount plaintiffs prayed judgment. The answer of defendants denied the material allegations of the petition, except admitting the execution of the policy. In a second paragraph they relied on certain exclusions from the general coverage in the policy saying: "This policy does not cover, as respects Coverages C. D. E and F loss or damage to the automobile: * * * Loss or damage due to: Wrongful Conversion, Embezzlement or Secretion by a mortgagor, vendee, lessee or other person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract or agreement, whether written or verbal; * * * (M) (1) While rented under contract or leased."

The reply denied that the automobile "was in the possession of some party other than the plaintiffs, pursuant to the consent or agreement of the plaintiffs under a contract of rent or lease or otherwise," and it was also denied "that said automobile was stolen by a party who was lawfully in possession of the automobile, by the act of or without consent of the plaintiffs." Trial was had before a jury and under the instructions of the court it returned a verdict in favor of plaintiffs for the total amount sued for, $375. Defendants' motion for a new trial was overruled and they excepted thereto and to the judgment rendered thereon. They have filed the transcript of the record with this court with a motion for appeal, which is now sustained and the appeal granted.

Counsel for appellants, in their brief filed in this court, address their entire argument to the error of the court in failing to sustain their motion for a peremptory instruction in favor of their clients which is based on their construction of the inserted exclusions supra. Therefore, the only question presented to us on this appeal is, whether or not the inserted exclusions took the risk assumed by defendants out of the general coverage of the policy, which defendants' counsel contend was and is true, while counsel for plaintiffs contend and argue to the contrary. Both sides cite and rely on only three domestic cases, but text authorities and cases from other jurisdictions are cited by counsel for each litigant in support of their respective positions. The three domestic cases relied on by plaintiffs and appellees are Federal Insurance Co. v. Hiter, 164 Ky. 743, 176 S. W. 210, L. R. A. 1915 E, 575; McKenzie v. Travelers' Fire In-

surance Company of Hartford, Conn., 239 Ky. 227, 39 S. W. (2d) 239, and Fidelity & Guaranty Fire Corp. v. Ratterman, 262 Ky. 350, 90 S. W. (2d) 679. While those cases stated the principle (which perhaps a majority of courts have approved) to the effect that the word "theft" as used in such indemnity policies embrace that class of thefts where the alleged thief procured in some sort of fraudulent transaction the consent of the insured owner to the transfer of possession to him (the thief) with the intention entertained at that time to later appropriate the car to his own use in derogation of the rights of the insured. Nevertheless, the opinions in those cases were based upon the question as to whether or not the evidence adduced was sufficient to prove that such a felonious intent was entertained by the alleged thief at the time he procured the consent of the insured to deliver to him the possession of the insured car.

We have examined the policy contained in the record of the Hiter case and it contains no such exclusions as the inserted ones supra, contained in the policy sued on in this case. In the Ratterman case it was expressly stated that the action was not based on any "wrongful conversion" of the insured car in that case, since the policy there sued on contained no such exclusion. Therefore, when carefully analyzed neither of the three cited domestic cases sustain the theory upon which plaintiffs' right of recovery is based, since their determination was made to rest upon the sufficiency or insufficiency of the evidence to establish a theft of the involved automobile in each of them.

It will be noted that in the exclusion here relied on there is taken from the coverage of the policy sued on a number of wrongful acts on the part of the guilty possessor, which are: "Wrongful Conversion, Embezzlement or Secretion by a mortgagor, vendee, lessee or other person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract or agreement, whether written or verbal," etc. That list of exclusions clearly brought Blue within the category of guilty actors for whose acts and conduct the defendants were not liable. However, plaintiffs' counsel insist to the contrary, and in support thereof they place much emphasis on the phrase in the inserted exclusions "in lawful possession of the insured property," which they contend does not embrace possessions that are ob-

tained fraudulently or in the exercise of some deceptive pretense, whilst counsel for defendants insist that the phrase means a possession given by the insured voluntarily, regardless of the incentive which induced him to do so, and which we are convinced is the correct interpretation, since otherwise the exclusion would become practically nullified. Since the owner of the insured automobile has the exclusive right to determine the one with whom he will entrust the possession of his insured property, and who presumptively possesses information as to the risk so assumed with opportunities to withhold the transfer of possession for any moral hazard incurred, therefore the loss should fall on him rather than on his insurer who possesses no opportunities to ascertain such facts. It was so held in the cases of Royal Insurance Company, Limited v. Jack, 113 Ohio St. 153, 148 N. E. 923, 46 A. L. R. 529; Gunn v. Globe & Rutgers Fire Insurance Company, 24 Ga. App. 615, 101 S. E. 691; Shelton v. National Fire Insurance Company, 115 W. Va. 268, 174 S. E. 887; Fiske v. Niagara Fire Insurance Company of New York, 207 Cal. 355, 278 P. 861; Dalafield v. London & Lancashire Insurance Co., Limited, 177 App. Div. 477, 164 N. Y. S. 221; and Frederick R. Van Vechten, Respondent v. American Eagle Fire Insurance Company, 239 N. Y. 303, 146 N. E. 432, 433, 38 A. L. R. 1115. There are also cited some Texas cases and numerous text authorities to the same effect, and we, in the McKenzie and Ratterman cases, expressly approved the character of theft covered by such a policy as being "theft under this contract is theft as common thought and common speech would now imagine and describe it." That language was taken from Judge Cardozo's opinion in the Frederick R. Van Vechten case, and it was also approved in other of the above cited cases. But, it is our interpretation that the language "in lawful possession" as employed in the instant exclusion applies only to "other persons not lawfully possessed of the insured property," and does not apply to wrongful conversion, embezzlement by a mortgagor, vendee or lessee, whose wrongful acts are excluded from the coverage of the policy, notwithstanding the manner or method by which they obtained possession of the converted or stolen insured automobile.

Moreover, our legislature, in 1926, enacted section 1376r-7 of Baldwin's 1936 Edition of Carroll's Kentucky Statutes (section 434.040, KRS) which says:

"Any person who fraudulently converts to his own use, * * * any motor vehicle or any part of a motor vehicle delivered to him, shall be punished as provided in KRS 432.220." That statute clearly defines and punishes what the legislature described as a "wrongful conversion" which, as we have seen, is one of the risks, by itself, excluded from the general coverage of the policy sued on. The conversion, so described by the statute, is, nevertheless a wrongful conversion, although the converter fraudulently obtained the possession from the one having the legal right to it. It would therefore appear that the exclusion of "Wrongful conversion" was the same character of wrongful or fraudulent conversion described in the statute, which was in existence at the time the involved policy was written. So that our conclusion is that the defense of a "wrongful conversion" is of itself sufficient to relieve defendants from any obligation under the policy, in addition to such relieving facts hereinbefore discussed.

Judge Cardozo, in the Frederick R. Van Vechten v. American Eagle Fire Ins. Co., case supra, correctly said that the court in a case like this is not called upon to construe a statute, but to construe a contract, and that fact is emphasized in most or all of the cases supra, as well as by standard text authorities. They (such authorities) also hold that under exclusions similar to the one we have here the insurer plainly manifests therein an intention not to enter into a contract equal to "a blanket bond guaranteeing the integrity of all persons" to whom the insured might voluntarily entrust the possession of the insured property, and that the loss incurred by such delivery should be borne by the insured who possesses superior opportunities for ascertaining the moral character and reputation of the one to whom possession is so given than does the insurer and that the consequences should fall on the one possessing such better opportunities.

Wherefore, for the reasons stated, the judgment is reversed with directions to sustain the motions for a new trial and also sustain defendants' motion for a peremptory instruction on another trial, if one be had and the testimony is substantially the same as in this one.

The whole Court sitting.