PACIFIC INDEMNITY CO., Appellant,

v.

Ben HARRISON et al., Appellees.

No. 14894.

Court of Civil Appeals of Texas.
Dallas.

Jan. 21, 1955.

On Rehearing March 11, 1955.

Rehearing Denied April 8, 1955.

L. W. Anderson, Dallas, for appellant.

Melton & Titus, Dallas, for appellees.

YOUNG, Justice.

The suit of plaintiffs (appellees) was for recovery on an automobile insurance policy; the vehicle owned by them having been lost in a transaction alleged to be within coverage of the contract of insurance sued upon. Defendant Company denied liability on ground that the loss suffered was subject to an exclusion, also contained in the policy; upon trial, the court holding the exclusion not applicable and rendering judgment for plaintiffs in amount of $750 and legal interest from November 25, 1953. Defendant has duly appealed the adverse rendition.

Plaintiffs were automobile dealers in the Oak Cliff section of Dallas and facts antecedent to their claim are, in brief, that on July 23, 1953, after banking hours, a stranger giving name as J. E. Davis came to their place of business and asked to be shown some used cars with a view of purchase. He represented himself as newly from Georgia, giving local address and name of employer; deciding, after a trial run, to buy a 1949 four-door Buick Super, then owned by plaintiffs and on the premises for sale. Davis thereupon signed the required tax affidavit and application for Texas Certificate of Title, giving check upon a local bank in payment. The car was then turned over to him with instruction to return the next morning for papers transferring the title; the salesman at the time calling appellees' insurance agency and securing a binder covering the transaction. Said Davis did not return for the further papers, having no account at the named bank, and his statements as to em-

ployment and residence were found to be false; he disappearing in fact with plaintiffs' car and efforts to locate him through police channels and otherwise were without avail. Due proof of loss was made as for theft with car valued at $750; provision of policy applicable thereto being: "Coverage G–2– Theft (Deductible form) To pay for loss of or damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery or pilferage, except that $25.00 shall be deducted from the amount of each loss not occasioned by the taking of the entire automobile." In turn, appellant denies liability for the loss on basis of the following exclusion: "Exclusions—The policy does not apply: (d) Under any coverage—to loss resulting from either the insured voluntarily parting with title and possession of an automobile if induced so to do by any fraudulent scheme, trick, device, false pretense, or from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage commited by any person, including any employee, entrusted by the insured with either custody or possession of the automobile."

■ Certificate of Title to the insured automobile had not been endorsed, assigned, or delivered to Davis, the thief, on the afternoon of July 23, 1953, when he obtained possession of same and disappeared. Such instrument is still in the hands of appellees and was introduced in evidence. Obviously, therefore, that part of the policy exclusion of coverage does not apply to a loss not involving insured's voluntary parting with both *title* and possession of this property. Neither was there an entrustment under instant facts and circumstances. In Webster's New International Diction-ary, Second Edition, Unabridged, the word "entrust" is defined as follows: "To confer a trust upon; esp., to deliver to (another) something in trust, or to commit or surrender (something) to another with a certain confidence regarding his care, use, or disposal of it; as, to *entrust* a servant with one's goods, or to *entrust* money to a servant." In 22 Words and Phrases, Intrust, p. 485, the case of State v. Ugland, 48 N.D. 841, 187 N.W. 237, 249, is cited, defining "entrusted" as meaning "something more than naked possession or custody of, or access to property appropriated. It is defined as to confer a trust upon; to deliver to another something in trust or to commit something to another with a certain confidence regarding his care, use or disposal of it." Appellant makes a strong argument in support of its second point.[1] However we approve appellees' statements made in the same connection: "It is clear that the condition described in this definition (Webster's Dictionary) did not exist in the transaction which gave rise to this lawsuit. The appellees did not confer a trust upon the thief, and they entertained no confidence regarding the care, use or disposal of the automobile, since the relationship which they contemplated was that of seller and purchaser. In such a relationship there is no trust, or any confidence regarding the future disposal of the automobile."

The judgment under review is accordingly affirmed; approving and making part of this opinion the trial court's findings of fact and conclusions of law: "Findings of Fact: (1) The insurance policy introduced into evidence was in full force and effect at all times material herein, according to

---

[1] Such argument is here quoted: "To thus construe the contract as the trial court has done would be to rewrite the exception and not give the correct meaning which common sense dictates as to the use of the word 'entrust.' In the second place, even if it be assumed, for the sake of argument, that the trial court was correct in its narrow interpretation of the word 'entrust' we believe, by the very testimony of the witness for the plaintiff, Powell, that custody and possession of the automobile was entrusted to the thief Davis and he was supposed to return the following day. Thus, Powell, by entrusting the car to the thief Davis who was to return the next day for the papers and insurance, thereby created an entrustment of the automobile within the terms and provisions of the exclusion so as to satisfy even the most strict construction."

stipulation of the parties. (2) The plaintiffs are the owners of a 1949 Buick automobile, more specifically described in the title certificate received in this case as plaintiffs' Exhibit 2, which is under mortgage held by the Oak Cliff Bank & Trust Company, in which the Oak Cliff Bank & Trust Company has an equitable interest having paid off the note on this automobile. (3) The automobile was held for sale by the plaintiffs in their business of dealer in used automobiles. (4) That pursuant to their business of buying and selling automobiles, the plaintiffs, through their agent, Powell, negotiated with an individual identifying himself as James E. Davis, 216 S. Ewing Street, Dallas, Texas, for the sale of said automobile. (5) That during such negotiations Davis made false and fraudulent statements to the agent of the plaintiffs. (6) That such statements and the conduct of Davis constituted a false pretext whereby Davis obtained possession of the automobile. (7) At the time he obtained the automobile, Davis had the intent to deprive the owners of the value thereof, and to appropriate it to his own use and benefit. (8) Pursuant to such intent Davis did so appropriate the automobile. (9) That the Certificate of Title to said automobile was not endorsed, assigned, or delivered to Davis at any time. (10) That it was the understanding of the plaintiffs at the time they parted with possession of the automobile that a sale had been made and it was their intention at the time of this supposed sale that the individual indentified as Davis should receive both possession and title of the automobile. (11) The plaintiffs did not entrust the automobile to Davis. (12) Davis was a thief, and the entire transaction heretofore mentioned with reference to this sale was but a cleverly executed, fraudulent scheme, which constitutes a theft of the automobile, and that Davis did not receive title, either legal or equitable, to the automobile in question. (13) According to the stipulation of the parties, the amount of the loss would be $750.00. (14) According to the stipulation of the parties, the proof of loss received in the case as plaintiffs' Exhibit ———, was submitted to the defendant within the time prescribed by the policy. (15) The time for submission of the proof of loss being within ninety-one days from the date of the loss, the proof of loss was submitted on or before the 25th day of October 1953. (16) The defendant has not paid the amount of the loss in accordance with such proof of loss submitted to them by the plaintiffs. Conclusions of Law: (1) The plaintiffs, on the 23rd day of July, 1953, suffered a loss by theft of the automobile in controversy, which loss is within the meaning of the insurance policy sued upon. (2) In the policy sued upon, under Paragraph 5 of Form 10, Subparagraph (d) of said Paragraph 5, under 'Exclusions,' reading: 'Under any coverage' etc., the first portion of said exclusion being the loss resulting from 'the insured voluntarily parting with title and possession of any automobile, if induced so to do by any fraudulent scheme, trick, device, false pretense,' is not applicable here because the title to the automobile has not passed to Davis, who, under the previous findings of fact, has the status of a thief and no more. (3) That the following portion of said exclusion, reading: 'or from any embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person, including any employee, entrusted by the insured with either custody or possession of the automobile' is to be construed as limiting the class of persons to those entrusted with either custody or possession of the automobile. (4) That, pursuant to the general and established rules of construction, an insurance policy should be construed, if ambiguous, in favor of the insured and in favor of coverage. (5) That the terms of the policy required payment of the loss not later than the 25th day of November 1953."

Affirmed.

DIXON, Chief Justice (concurring).

I concur in affirming the trial court's judgment.

Appellant's first point on appeal is based on this wording in the exclusion provision

of the policy: "The policy does not apply: (d) Under any coverage—to loss resulting from * * * the insured voluntarily parting with title and possession of an automobile if induced so to do by any fraudulent scheme, trick, device, false pretense, * * *."

The undisputed evidence shows that appellees had not parted with title to the automobile. The conveyance of title had not yet been effected when the thief disappeared with the car. The Certificate of Title was in the possession of the Oak Cliff Bank & Trust Company with whom it had been placed as security for a loan. The conveyance of title to Davis was therefore postponed until next day so appellees could obtain the certificate and properly endorse it as required under our Certificate of Title Act, Vernon's Ann.Penal Code, Article 1436–1, §§ 33, 52, and 53.

Appellant says that we should not narrowly interpret the word title, as used in the exclusion provision, but should broadly interpret the word to mean ownership. I am unable to accept appellant's viewpoint. If the language of the policy were sufficiently uncertain to require interpretation (which I do not believe it is) it would be our duty to interpret it, so far as reasonably possible, in favor of the insured and against the insurer. Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379. I concur in overruling appellant's first point.

Appellant's second point on appeal is based on the second part of the exclusion provision, " * * *, or from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person, including any employee, *entrusted* by the insured with either custody or possession of the automobile". (Emphasis supplied.) It is appellant's contention that the car was entrusted to Davis.

This was a trial before the court without a jury. Appellant requested and the court filed findings of fact and conclusions of law. Here is the trial court's finding of fact No. 11: "The plaintiffs did not entrust the automobile to Davis."

There were no exceptions filed to the above quoted finding of the trial court. It was not attacked on the ground that there was no evidence to support it, or that there was insufficient evidence to support it. Appellant's second point merely asserts that the trial court erred in rendering judgment for appellees because "said loss resulted from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by a person entrusted by the insured with either custody or possession of the automobile and such loss was excluded under the policy of insurance." In its discussion under the above point appellant quotes two questions and answers from one witness as support for its contention that the court erred in finding that the second part of the exclusion did not apply to the loss in question. But no grounds are pointed out to us which under the law would permit us to ignore the trial court's adverse finding that there was no entrustment. Evans v. Rush, Tex.Civ.App., 254 S.W.2d 799; Zapata County v. Llanos, Tex.Civ.App., 239 S.W.2d 699. Therefore I concur in overruling appellant's second point, and in affirming the trial court's judgment.

### On Rehearing

DIXON, Chief Justice.

I believe that the motion for rehearing should be sustained, our affirmance should be set aside, and the judgment of the trial court reversed and judgment here rendered for appellant that appellees take nothing.

After further consideration I have concluded that appellant's second point is sufficient to challenge the trial court's finding of fact No. 11: "The plaintiffs did not entrust the automobile to Davis." See Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156; Airline Motor Coaches v. Caver, 148 Tex. 521, 226 S.W.2d 830; Weir v. King, Tex. Civ.App., 166 S.W.2d 187 (ref.w.m.).

I still think the majority opinion is correct in overruling appellant's first point on appeal. Under our Certificate of Title Act, Penal Code, Article 1436–1, sections 32, 52

and 53, appellees had not parted with title and possession of the automobile in question. Hence coverage was not excluded under the terms of the policy on the ground that they had voluntarily parted with title and possession.

However the contract of insurance which the parties entered into contained this express provision: "Exclusions—The policy does not apply: * * * (d) Under any coverage—to loss resulting from * * * embezzlement, conversion, secretion, theft, larceny, robbery or pilferage committed by any person, including any employee, entrusted by the insured with either custody or possession of the automobile."

The material facts are undisputed. But to make my position clear it is necessary to quote at some length from the testimony of O. W. H. Powell, a witness for appellees:

"Q. Did you know this man? A. Never had met him before. I talked with him a good while and he seemed to be up and all right, because he showed me some papers and a letter from Atlanta, Georgia, and I told him I knew some people in Atlanta and he knew some people in Atlanta and named streets they worked on and seemed all right. * * *

"Q. Did you make any arrangements for completing the deal that day? A. It was to be completed the following day after we got the title and had it transferred in his name. He was coming by the next afternoon and pick up the papers. * * *

"Q. (By Mr. Titus): Did the man leave with the automobile that day? A. He left the lot, yes.

"Q. Have you seen him since then? A. I have not. He drove south towards the address he gave me.

"Q. Have you seen the car since then? A. I have not. I have looked for it quite a bit.

"Q. Did you have anything to do with the events with regard to this transaction that happened the next day after this sale? A. No, nothing except I phoned the Bank early, as soon as they opened the next morning to see if the check was good. * * *

"Q. Did you make a report to the police department? A. Yes.

"Q. What did you report to them? A. His name and all, and the address he gave me, and the description of the car and the motor number and license number.

"Q. Why did you make a report to them? A. Because, when I found out he didn't have any money in the bank.

"Q. In other words, you wanted the car back? A. Why, sure."

On further questioning of Mr. Powell on cross-examination, he testified as follows:

"Q. You wouldn't have turned over the car to him if you had known those statements were untrue; is that correct? A. Absolutely. * * *

"Q. When a man comes to you to buy a car and has a check, don't you do something—require some identification other than merely taking a check? A. Yes, as a rule, but the bank had closed.

"Q. I meant identification; I didn't mean calling the bank. A. Well, the letters and all he showed me and told me, and he said he lived at 216—

"Q. Well, you do take some identification, don't you? A. Yes.

"Q. And if you knew the identification wasn't correct, you wouldn't have accepted the check, would you? A. No, I wouldn't have let him have the car. * * *

"Q. And, to be sure it would be covered until he definitely either bought the insurance from your man or bought the insurance somewhere else, you had your agent issue a binder to cover him against loss, did you not? A.

Yes, we discussed that in the course of the deal, and he said he would let me know about it tomorrow when he came by to pick up the papers. * * * "

■ We have agreed with appellees that the fact that Davis, a thief, executed an application for a new Certificate of Title did not pass title in view of the requirement of section 33 of the Certificate of Title Act which says that the transfer must be executed by the owner, The appellees, the owners here, did not execute or deliver the title to the thief at any time. They had the thief's promise to return the next day to complete execution of the papers necessary to effect transfer of title and to make final arrangements about insurance coverage. Meantime appellees, as I see it, entrusted possession of the car of which they were still the owners to the thief in reliance upon his promise. The thief betrayed the trust. He did not return next day. He has not been located or heard from since he obtained the car. He kept the car, which he obtained by inducing appellees to trust him with possession during the interim that must necessarily transpire before the deal could be consummated the next day.

The word entrust has been defined by both lay and legal authorities in substance to mean to commit something to another with a certain confidence regarding his care, use or disposal of it. Webster's New International Dictionary, Second Edition (1941): State v. Ugland, 48 N.D. 841, 187 N.W. 237, at page 239; 22 Words and Phrases, Intrust, p. 485; 48 C.J.S., Intrust, p. 754.

I have not found any case exactly in point. But the case of Empens v. Tomer, 170 Wash. 524, 17 P.2d 21, though the facts are different, gives some support to my view that the circumstances in the case now before us constitute an entrustment. In another case, Aetna Cas. & Surety Co. v. Salyers, 294 Ky. 826, 172 S.W.2d 635, in which the terms of the exclusion provision in an insurance policy were somewhat similar to the exclusion provision here, coverage was held to be excluded. The facts involved a wrongful conversion where the converter disappeared with the automobile after having made a payment to the seller toward the purchase price.

I do not doubt that there are policies of insurance which provide coverage under the circumstances here present. Such a one was the policy involved in Alamo Casualty Co. v. Harkins, Tex.Civ.App., 252 S.W.2d 1014. But that is not the type of coverage for which the appellant and appellees chose to contract in this case. Here, as I see it, the facts constitute a "conversion, secretion, (or) theft" committed by a person "entrusted by the insured with either custody or possession of the automobile." Since such a situation expressly excludes coverage under the express terms of the policy, I think the judgment of the trial court should be reversed and judgment rendered that appellees take nothing.

CRAMER, J., is in accord with the views herein expressed, so our judgment affirming the trial court's judgment is set aside, the judgment of the trial court is reversed and judgment is here and now rendered for appellant that appellees take nothing by their suit.

CRAMER, Justice.

I am in accord with the views expressed by Chief Justice DIXON in the above opinion on rehearing, and concur in reversing and rendering judgment as above stated.

YOUNG, J., dissents on grounds stated in original opinion.