STATE OF NORTH DAKOTA, Respondent, v. H. M. SEVERIN, Appellant.

(228 N. W. 199.)

Opinion filed December 6, 1929.

*Sinness & Duffy,* for appellant.

794

*N. J. Bothne,* State's Attorney, for respondent.

BURR, J.   The defendant was convicted of "engaging in the liquor traffic as a second offense"—the specific charge being that in Eddy county the defendant "did wilfully, unlawfully and feloniously possess intoxicating liquor intended for use as a beverage; that such intoxicating liquor consisted of whiskey and alcohol, that on the 10th day of November 1926, in the district court of Eddy county the said above named defendant was found guilty of the crime of engaging in the liquor traffic and on the 13th day of November 1926, was sentenced by the district court."

The defendant made a motion for a new trial, and on this being denied he appeals from the judgment and sentence of the district court and the order denying the motion for a new trial.

There are three classes of specification of errors, viz.: that the trial court erred in denying the motion for a continuance of the case over the term made at the commencement of the trial; that the court "erred in failing to instruct fairly and impartially upon all of the issues in

each cause and particularly in failing to give any instructions on the presumption of defendant's innocence;" and that the verdict is contrary to law in "that the evidence wholly fails to show that the crime, if any, was committed in Eddy county and the evidence wholly fails to show that the defendant had in his possession intoxicating liquor." In addition error is predicated on remarks of the court made in the presence of the jury.

The record shows the defendant was arrested on or about August 13, 1928. He waived examination and was admitted to bail in the sum of $1,000. In 1926 this defendant had been convicted of violating the prohibition law and sentenced by the district court to serve a term of imprisonment in the county jail; but the court suspended the execution of such sentence and paroled the defendant. After the arrest on the second charge the court, as the defendant himself says in his brief, "revoked his suspended sentence and caused him to be confined in jail, subsequently transferring him to the county jail of Foster county." The case at bar came on for trial November 20, 1928, while the defendant was serving his former sentence. He was brought from Foster county to Eddy county and permitted by the judge to be at large during the time of trial. When the case was called for trial the defendant made an oral motion for continuance of the case over the term; his counsel at that time stating to the court:

"The situation is that in the case in which he was convicted before, the sentence was suspended. When he was arrested on this charge the suspension was revoked. He has been confined in the jail and he is still confined in the jail. He was taken down to Foster county and has been confined there in the jail all of the time. I have endeavored to get the sentence suspended long enough for him to get out of jail and prepare for the trial of this case. I have not been able to get the consent of the state's attorney to do that, and I do not feel that a man can properly prepare his case when being confined in jail, and that it is wholly unfair to keep him in jail on one charge and try him on another at the same time. Therefore, I shall ask that the case be continued over the term so that he will have an opportunity to prepare his case for trial."

The record does not contain any showing in support of this motion. There is nothing to show that from the time of the arrest of the de-

fendant in August until commencement of the trial in November—a period of over three months,—the defendant could not prepare for his trial. There is no showing when his parole was revoked or how long he was at liberty before that time. There is no showing that he was in any way different from a man who is arrested upon a criminal charge and detained in jail because he is unable to furnish bail. This defendant would be no more handicapped in preparing for trial than a man lying in jail waiting trial. There was no error in denying the motion for continuance.

The specification of error regarding the alleged failure of the court "to instruct fairly and impartially upon all of the issues" comprises the exceptions to the instructions, filed with the court. The first exception attacks this portion of the charge:

"I think it is not necessary for me to tell you that your attitude towards this particular law should in no way influence you. It is not a question of whether the law is a good law or a bad law. The question is, has this law been violated."

It is said: "This was clearly an intimation by the court that failure to convict would brand the jurors as being opposed to the prohibition law." We do not so construe the instruction. It was directed as much to those jurors who were biased in favor of prohibition, telling them not to convict unless it was shown the law had been violated, as it was to those who believed to the contrary.

The next exception is that the court said: "The questions of fact are: Did the defendant at that time and place named in the information have in his possession intoxicating liquor, to-wit; Whiskey and alcohol; and is this his second offense?"

It is alleged that this makes "mere possession conclusive as to defendant's guilt." The exception overlooks another portion of the charge, which must be taken in connection with the portion objected to, viz.:

"I charge you gentlemen of the jury that it is the having in possession of intoxicating liquor intended for use as a beverage that is the gist of this offense."

The appellant objects to the portion last quoted, also, on the ground that "under this instruction the jury may have found defendant guilty for being in possession of the keg, Exhibit K (the keg of wine) possession of which he admitted," or certain bottles containing wine which

defendant admitted had been in his custody several days. It is true the information states that the intoxicating liquor of which the defendant was possessed consisted of whiskey and alcohol; but a search warrant had been issued and upon search of the premises this keg of wine was found concealed in the coal bin. The defendant admitted it was his; there was no objection to the introduction of the exhibit in evidence. The defendant himself in his brief says: "The reason for not objecting was that the objection would have been wholly unavailing in so far as the effect upon the jury was concerned." In the charge the court said:

"It is the being in possession of intoxicating liquor intended for use as a beverage which is the gist of this offense;" but the court in its instructions to the jury in another place charged that "whiskey and alcohol" were the intoxicating liquors, the possession of which had to be proven and said:

"I charge you, Gentlemen of the jury, that if the defendant, either as principal or as accessory, had possession of intoxicating liquor, that is, whiskey or alcohol, and you so find beyond a reasonable doubt, your verdict must be a verdict of guilty as charged in the information, if you will also find that he was heretofore convicted as charged in the information."

"Under our law whiskey and alcohol are intoxicating liquors, and it is not necessary to prove that they are intoxicating. The law presumes that those liquors are intoxicating liquors."

It is said the court erred in stating to the jury:

"To be the possessor, it is not necessary that one has the prohibited liquor in his physical possession, or that he is the sole possessor. If alcohol or whiskey are kept on defendant's premises, in his hotel or the hotel of which he was the proprietor, with his knowledge and consent, and you so find from the evidence beyond a reasonable doubt, you should find the defendant guilty as charged."

Defendant says: "Here the jury is specifically instructed to find the defendant guilty if it finds that he heretofore had possession of alcohol or whiskey." It is said because the court used the word "are" instead of "was" when saying, "If alcohol or whiskey are kept on defendants premises" the jury might consider if any liquor had been found on the premises of the defendant some time before including

the former case in which he had been convicted; that "there is no limitation as to time or place." This objection is quite hypercritical. The jury could not have been deceived or misled in regard to the matter, by the use of "are" instead of "was;" for in another portion of the charge the jury was instructed properly, as to time and place, and all the evidence pointed to the time mentioned in the information filed in the case wherein defendant was charged with having the liquor in his possession on the 11th day of August, 1928.

The defendant also says that there was doubt "as to what the court meant by the statement that physical possession was not necessary." The defendant says if a hotel guest have a bottle of intoxicating liquor in his room the hotel proprietor would have no more control over it than any other stranger. The defendant was the proprietor of a hotel. He was charged with having in his possession intoxicating liquor. The evidence showed that the liquor charged to have been in the possession of the defendant was taken from the defendant's premises which he was using as a hotel; that some of the liquor at least he admitted was his; and some was taken from his own private apartment in the hotel. The court said it did not need to be in his "physical possession." No one could misunderstand that term and it was not necessary for the defendant to carry it on his person. If he had it in his hotel and it was there with his knowledge and consent so he was aiding and abetting another in illegal possession the court's charge was sufficient. The court said further: "It is illegal to have any quantity of intoxicating liquor intended for beverage purposes in one's possession." The court differentiated in a case where intoxicating liquors might be taken into a hotel "without the proprietor's knowledge and consent," and said that in that case "he would not be guilty as a possessor." In the charge the court read the statute specifying that all parties concerned in the commission of a crime are principals.

"All persons concerned in the commission of a crime, whether it is a felony, or a misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, or not being present, have advised and encouraged its commission, . . . are principals in any crime so committed." Comp. Laws, § 9218.

This was because one of the witnesses came forward and claimed most of the liquor as his own and the state was attempting to prove

that this liquor was owned partly by the defendant or that the defendant knew the witness was possessing and keeping liquor in the defendant's rooms and aided and encouraged him in the commission of the offense. When we take the charge as a whole we find no error therein as claimed by the defendant.

The defendant however says: "What is liquor traffic?" and that the mere possession of intoxicating liquor as outlined is not "traffic." The defendant argues that because some Federal courts hold that the national law known as the Volstead Act does not make possession of intoxicating liquor a crime therefore the law of this state could not be construed as making possession a crime except "to this extent that the legislature must show a very clear purpose before the act will be construed as conflicting with the provisions of the Federal law, particularly when the act specifically provides that it is intended to bring the state law in harmony with the Federal law." The appellant does not point out any portion of our state law which conflicts with the federal statute. Our law supplements it. Possibly it is more drastic. The right of the state to pass a law controlling the liquor traffic is not dependent upon the 18th Amendment of the Constitution of the United States nor any laws that Congress may make to carry such an amendment into execution. Neither is the state required to keep within the limits deemed wise by Congress. Our statute, § 10,145b3 of the Supplement, says:

"Any person who shall within this state, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor shall be guilty of the crime of engaging in the liquor traffic."

It may be the word "traffic" ordinarily would include barter, and sale, but that is not the statement of the legislature. The legislature made definite the term "engaging in the liquor traffic." The defendant says in effect that the presumption of the sale, or charges of sale or barter, must be included. If one manufacture intoxicating liquor in this state he is by the legislature said to be engaged in the liquor traffic even if he manufacture it for his own use, only. The question of sale and barter is not involved. The same with transportation, importation or exportation. If liquor be transported or imported it may be for purely private use, nevertheless it is within the terms of the statute defining engaging in the liquor traffic. So with possession.

The exceptions to the transportation, purchase and possession, set forth in § 10,145b4 to wit:

"Provided that pure grain or ethyl alcohol for nonbeverage purposes and wine for sacramental purposes may in good faith only be used, transported, purchased and possessed as provided in this chapter,"— are not involved in this case. The court limited the possession to possession for beverage purposes. The court's construction was correct.

The defendant says that on the whole it appears the instructions were not a "fair and impartial statement of the law but was an argument for the prosecution." We do not so understand the charge nor do we get this same impression. The court told the jury the State must prove its case beyond a reasonable doubt, that if they believed a witness testified falsely on any material matter they had a right to disregard his testimony; that if they were not satisfied with the quality of the testimony with that degree of certainty that they use in acting without hesitancy in the most important affairs of their lives then they should find the defendant not guilty.

The seventh exception is to that portion which says:

"If you feel satisfied to the degree that you would act without hesitation in your own most important affairs of life, then you are satisfied beyond a reasonable doubt, and if you are so satisfied of the defendant's guilt, then it is your duty to find him guilty."

The excerpt omits this statement which follows immediately: "and, if you are not so satisfied, then it is your duty to find him not guilty."

The court had already charged as to reasonable doubt saying: "A reasonable doubt is not an imaginary doubt, but it is a doubt that arises naturally in your mind after a fair, impartial consideration of all the evidence in the case, and leaves your mind in that condition that you do not feel an abiding conviction amounting to a moral certainty of the truth of the charge. It does not mean a mere speculation or possibility of chance, but an actual, reasonable feeling of uncertainty."

In view of the whole charge there was no error in the statement of reasonable doubt.

The question of failing to instruct specifically on the presumption of innocence is withdrawn in the light of the decision of this court in the case of State v. Bowe, 57 N. D. 89, 220 N. W. 843.

It seems that during the trial of the case one Charlesworth was testi-

fying as a witness for the defendant. He stated he purchased "from a booze runner" part of the liquor that was seized and had carried it upstairs in a gunny sack to his room in the hotel; that he had met this man in a garage, that he had paid him $12 a gallon for some of it and $6 a quart for other; that the dealer drove to the side door of the hotel with it and delivered it to him; that he had seen him before but had not done business with him; he did not know who the "booze runner" was and never had any dealings before with him; that this was the first time he had booze in his possession in the hotel. This was on cross-examination. He had testified to a considerable length before and the court asked the witness: "You never dealt with this booze runner before?" The answer was: "I didn't deal with this bird before, no." The court then said: "Never dealt with him before; you better tell the truth or you will get in deeper than you were before; you better tell the whole thing." It is charged that this was error, as it showed the attitude of the court toward the case. The witness was himself waiting trial for engaging in the liquor traffic; in this case while under oath, he was convicting himself on another charge. It is not necessary to set forth all of the examination and cross-examination of this witness. The witness was 29 years of age but although he had lived around Sheyenne—the village where the defendant had his hotel— he had only been in the hotel a few days; he goes upon the stand and admits he was in the liquor traffic and had possession of a great quantity of liquor; that he had people in there and was mixing drinks for them and that the day when the liquor was seized was the day he had bought it from this booze runner. He said he had six cans in his room hidden under the register in the floor; he had bought other liquor that same day from this booze runner and all in all it might well appear that the witness was trying to exculpate the defendant and take the blame upon himself, and thus involving himself in the toils. He was careful to explain that the liquor planted in various places in the hotel, not only in his own room but in defendant's room and other places was his liquor despite the fact that the defendant admitted that some of it was his.; he admits that he intended to sell some of it and that though the defendant had delivered him the keys to some of the rooms in which the liquor was planted with an order to lock the doors and return the keys to the defendant, the defendant had nothing to do with the liquor.

Upon being confronted with contrary statements made out of court he admitted he had sold liquor before this, that he was awaiting trial on such a charge. He admitted attempts to deny, the record being as follows:

"And you had engaged in the liquor traffic prior to the time that you were taken into custody, and were in the custody of the sheriff's office here? Yes, sir.

"You had sold liquor before that? Yes, sir.

"The statements you made then in the sheriff's office were also untrue, weren't they? Yes, sir.

"Your reputation for truth and veracity isn't so good as it might be? Well, I thought I could get out of it maybe.

"You figured you could; you don't believe in telling the truth, in other words. Well, sometimes truth works all right, and sometimes it don't."

The court after the witness was through ordered him into the custody of the sheriff and it is said that this was an intimation that the court did not believe he was telling the truth; that it was a threat, an attempt to intimidate and that it could have no other effect than to discredit such witness. We would read into the act of the court the belief of the court that the witness was telling the truth in part at least, when he said he had some of the liquor in his possession for the purpose of sale and was intending to sell it. He swore to this on the stand and the court had a right to assume that possibly there might be some truth in that statement hence he should be arrested. We see no error in the act of the court in dealing with this witness.

It is said "the evidence wholly fails to show that the crime, if any, was committed in Eddy county." The testimony shows the defendant was the proprietor of a hotel in Sheyenne, this state; that it was in this hotel the liquor was found and that he was being prosecuted for having this liquor in his possession in this hotel in Sheyenne. It was not necessary for the state to produce witnesses to prove to an Eddy county jury, that Sheyenne is in Eddy county. It is true no one swore specifically that Sheyenne is in Eddy county but the court takes judicial notice that such a place is within Eddy county. Subdivision 14 of § 7938 says: the court takes judicial notice "of the limits of a county, and the fact that a place proved was within such limits." In addition

the sheriff of Eddy county was on the stand and told of his acquaintance with the defendant, of the defendant's place of business, and where it was located—that is in Sheyenne—that he searched that place and found this particular liquor that is described in the return on the search warrant and that he arrested the defendant in the hotel and took him with him. Other witnesses who were with the sheriff testified to finding the liquor in the hotel in Sheyenne. We cannot say that from all the testimony in this case the jury would be in doubt as to whether or not the crime had been committed in Eddy county especially in view of the fact that in the charge to the jury the court charged the state was required to prove the crime was committed in Eddy county.

The other errors alleged are of insufficiency of the evidence. It is not necessary to recite all the testimony. The evidence shows the defendant to be the proprietor of a hotel in Sheyenne; the sheriff, together with prohibition agents, was given a search warrant, and thereunder they raided the hotel. Some alcohol was found in a room next to the kitchen and a quart bottle with alcohol in it was found in one of the rooms upstairs. A bottle of alcohol and a can of alcohol were found in the defendant's own apartments upstairs; six cans filled with alcohol were found in a crate in the floor of another room upstairs, and a barrel of wine was found in the coal bin in the basement of the hotel. It is true the defendant denied he had any knowledge of liquor in the hotel "except as to the barrel of wine which he contended was cherry juice." It is true the witness Charlesworth as heretofore mentioned, claimed to own most of the liquor, that he had bought it from a booze runner and had distributed it in various rooms; but this same witness admitted the defendant gave him the hotel keys to various rooms on that very day when the witness said he had bought the liquor, with instructions to lock the doors after he had entered and left the rooms. The jury saw the defendant and his witness Charlesworth upon the stand and heard their testimony and were in a fair position to judge whether the defendant or Charlesworth was worthy of belief in this respect. In his brief appellant says: "If the instructions were correct the evidence is probably sufficient to warrant a conviction under those instructions." This is referring to the instructions regarding possession and we take this same view in regard to the evidence. While defendant denies the

truth of the charge and has introduced a witness who is willing to risk arrest and conviction by admitting that he bought and had in his possession liquor for sale and assumes the guilt, nevertheless the jury had sufficient evidence upon which they could find the defendant guilty and we see no reason for disturbing the verdict. It is quite probable the fact that the defendant was at that time serving a term of imprisonment for prior violations of the law had some influence with the jury causing belief that after his former conviction, and despite the fact the court had been lenient with him in suspending sentence, he had again engaged in the liquor traffic under the subterfuge of some one in his hotel being the owner of the contraband goods. No reversible error being shown the judgment of conviction is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.