STATE *v.* RAYMOND JASMIN.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 10, 1933.

*Elias Haddad* for the respondent.

*Jack A. Crowley,* State's attorney, and *F. C. Hinchey,* grand juror, for the State.

POWERS, C. J.   Under a complaint in two counts, charging him with loitering on a street in the city of Rutland and with a breach of the peace by assaulting a policeman who was attempting to arrest him, the respondent was convicted, and brings his case here by exceptions.

At the close of the State's evidence, the respondent moved to dismiss the complaint for failure of proof, and excepted when this motion was overruled.   This exception will not avail him, for he proceeded with his defense by introducing evidence, and, not having renewed his motion at the close of the evidence, he waived the exception he had taken.   *State* v. *Williams,* 94 Vt. 423, 443, 111 Atl. 701.

After verdict, the respondent moved to set aside the verdict, basing his motion on ten grounds, all of which, except three

which challenge the sufficiency of the evidence to support the conviction, were too general to require attention. The evidence for the State, disregarding the countervailing evidence, tended to show the following facts: Daniel J. Brown, a policeman, was walking his beat in the city of Rutland, on the evening of September 28, 1932. About nine o'clock, he found a group of men, which included the respondent, on West Street in that city. When the officer approached, this group moved away. Later in the evening, the policeman found another group which included the respondent, in front of a restaurant on Merchants Row, which runs at a right angle with West Street. The respondent stood in the midst of the group, and was talking with the others. The officer approached these men and ordered them to move on. All except the respondent obeyed. He refused. The officer started him along and urged him to go home. The respondent repeatedly told the officer not to push him, though in fact the officer did not touch him. They crossed Merchants Row, and the respondent started to go up West Street, but when the officer turned and went another way, the respondent came back and stood on the corner. Then the officer came back and ordered the respondent to go home. The respondent refused, saying that he wasn't going home. Thereupon, the officer ordered him to accompany him to the police station, and took hold of him and started to take him there. The respondent resisted by grabbing the officer's legs and they scuffled there until another policeman came to the rescue; then, the respondent was overpowered and taken to the police station. During the scuffle referred to, the policeman, Brown, struck the respondent with what was called at the trial, a black-jack. But this fact cuts no figure in the case. We are to confine ourselves to a consideration of the case against the respondent, and have nothing to consider or decide as to the policeman's conduct.

First, as to the charge of loitering: While the word "loiter" has various shades of meaning, as used in G. L. 6967, on which the first count of the complaint is based, it means to spend time idly, which is a meaning commonly ascribed to it. Webster's New Int. Dict.; *State* v. *Tobin,* 95 Conn. 58, 96 Atl. 312, 313. As the Legislature well knew, when the idle, the vicious, or the mischievous are allowed to congregate on the streets or in public places, danger threatens; and it is essential

to the public peace and protection of personal and property rights that such groups be broken up. To avoid the dangers incident to such gatherings, the statute referred to was enacted. The respondent stresses the importance of the words "without right" as used in the statute. But no one has a right to make a street corner a loafing place. The easement acquired in the streets does not cover that privilege. The record before us sufficiently indicates that the respondent had no legitimate reason for idling away his time on the city sidewalks. His refusal to move on when so directed by the policeman, his pretense that the officer was pushing him, his prompt return to the corner when the officer's back was turned, his vigorous resistance to arrest, and his admission that when he went back to the corner he intended to lick the officer, made obvious the fact that his conviction under the first count was abundantly warranted, if not well merited.

In the consideration of the charge of a breach of the peace, the legality of the arrest is a question of first importance. If it was legal, it was the duty of the respondent to submit, and resistance amounted to a breach of the peace. But, if it was illegal, it was an invasion of the respondent's rights which could lawfully be resisted. *State* v. *Mancini*, 91 Vt. 507, 510, 101 Atl. 581. When the arrest was made, the offense specified in G. L. 6967 was complete, and it was committed in the presence of the arresting officer. But the officer had no warrant, and we have no statute expressly authorizing an arrest without warrant for that offense. So if this arrest was lawful, authority for it must be found in the common law. See *Mazzolini* v. *Gifford*, 90 Vt. 352, 354, 98 Atl. 904. At common law, any officer charged with preserving the public peace could, without warrant, arrest a person who committed a breach of the peace in his presence. *In re Powers*, 25 Vt. 261. And, in like manner, in certain circumstances, he might lawfully interfere to prevent a breach of the peace. *State* v. *Carpenter*, 54 Vt. 551, 553; *State* v. *Mancini*, 91 Vt. 507, 510, 101 Atl. 581. So, without saying that the loitering shown amounted to a technical breach of the peace, we hold that, inasmuch as the statute in question was passed as a preventive measure and amounts to a legislative declaration that loitering on the streets endangers the peace and tranquillity of the community, this arrest was lawful, under the rule last above

stated. We appreciate the fact that in reaching this conclusion we are unsupported by any adjudged case directly in point. But the design of the statute was, to use Judge Redfield's language in *Spaulding* v. *Preston,* 21 Vt. 9, 13, 50 A. D. 68, to prevent more serious injury by "stifling the fountains of evil." The exigencies of these cases require prompt action if the statute is to accomplish in full the purpose of its enactment. And our conclusion is fully justified on the principle of the common law which authorized the arrest of a nightwalker without warrant. *Spaulding* v. *Preston, supra,* 21 Vt. at p. 15, 50 A. D. 68.

█ It is now claimed that the verdict of the charge of loitering is defective, and that for that reason it should have been set aside. But in enumerating the grounds of his motion, the respondent did not specify this defect or call it to the attention of the court. He cannot avail himself of it here.

█ The evidence offered by the respondent regarding his conduct prior to the arrest was not admissible. He may have been "acting like a gentleman" so far as being quiet and inoffensive is concerned, yet, if he was idling away his time on the street and did not move on when ordered to by the officers, he was guilty of loitering.

█ No reversible error appears in any remark of the trial judge. The suggestion that a certain witness was behaving better than the respondent's counsel might well have been omitted; but no harm appears to have resulted from it.

█ The respondent complains of the charge as given, and of the refusal of the court to charge as requested. It is enough here to say that the only exception to the charge was entirely too general to require consideration, under the rule applied in *State* v. *Donaldson,* 101 Vt. 483, 485, 144 Atl. 684; and that the exception to the refusal to charge was too general under the rule applied in *State* v. *Pierce,* 87 Vt. 144, 151, 88 Atl. 740.

*Judgment affirmed. Let execution be done.*