[File No. Cr. 141.]

STATE OF NORTH DAKOTA, Respondent, v. WILLIAM THOMPSON, Appellant.

(277 N. W. 1.)

Opinion filed January 3, 1938.   Rehearing denied January 15, 1938.

*E. C. Rudolph* and *Simpson, Mackoff & Kellogg* (on appeal), for appellant.

*P. O. Sathre,* Attorney General, *Milton K. Higgins,* Assistant Attorney General, and *W. A. Jacobsen,* for respondent.

MORRIS, J. The defendant was convicted in the District Court of McKenzie County of the crime of grand larceny. The information charged the theft on or about April 30, 1933, of four horses, namely, 1 sorrel gelding three years old; 1 grey mare three years old; 1 grey gelding four years old; 1 black gelding three years old; the property of Hugh Stevenson. The evidence presented to the jury the following facts: About the middle of March, Clynord Thompson, a son of the defendant, came on horseback to the farm of the Gravos family, which was about six miles from the Thompson home. He arrived in the evening and stayed all night. During the course of the evening he asked that someone go riding with him as he was looking for some horses. The next morning Clynord Thompson and Olaf Gravos started out on horseback. Clynord said he was looking for two of his own horses and two belonging to his father. Olaf Gravos was told by his father to look for two horses which the Gravoses had wintered for one Browning. The two young men first found the Browning horses, then rode on and found four more which Clynord said they should take. All six horses were rounded up and driven back to the Gravos farm, along with some of the Gravos work horses. They arrived at the Gravos place shortly before noon. After having dinner they drove all six horses to the Thompson farm. They were accompanied by Lafe Gravos, a brother of Olaf. They noticed no brands on the horses claimed by Thompson. William Thompson, the defendant, was not home when the horses were brought to his place. Several days later the defendant and his hired man drove the horses into a corral where they looked them over for brands. Olaf and Lafe Gravos were present. At the instruction of the defendant one of the horses was roped and thrown and the defendant and his hired man examined it for brands, and the defendant stated that there were no brands. The Browning horses were afterwards taken back to the Gravos place upon the orders of Henry Gravos. He testifies concerning his conversation with the defendant as follows:

"I told him to come out I liked to talk to him. I told him the boys

brought up, or weren't belonging to Mr. Thompson, there was one team that belonged to Mr. Browning and them other four, them belongs to Mr. Stevenson on the river, I say, and Mr. Thompson say 'What in the hell do you know about slicks,' he say. I say, 'Mr. Thompson, are you coming to draw my family into horse thieving? I never been that in this country and I never raised my children to be that'. I said, 'The first time you try to ship them horses out I am going to Schafer and get the sheriff down there.' I told him, 'We have been friends all of my life. If you do this against me, I'll call the sheriff, for I can tell you them are the Stevenson horses,' I say. He was mad. Thompson say, 'Send the boys over and we will see if they are slicks.' I say, 'I don't care if they are slicks or not.' "

A slick, in the vernacular of the range, is an unbranded horse.

The defendant testified that he sold the horses described in the information to one Wake on April 30. Before loading the horses he and Wake examined them for brands and found none. On direct examination he stated positively that at the time he sold the horses he knew they belonged to him, and that when the horses were brought to his place he thought two belonged to Browning and four belonged to Lafe Gravos. He testified that Lafe Gravos said the horses were his and he wanted to sell them. It was agreed that Thompson was to sell them to Wake for $15.00 per head. Lafe Gravos sold the horses to the defendant for that price, which was to be applied upon an account which Lafe owed the defendant. Wake paid Thompson by bringing him a load of oats. The load was either 160 or 260 bushels. Thompson fed part of the oats and sold some. None of the oats or money received therefor was paid to Lafe Gravos. Gravos denies the entire transaction and specifically disputes the defendant's testimony.

The evidence, when viewed from the standpoint most favorable to the verdict, shows that the defendant sent his son down to the Gravos place to look for horses, and then left home for several days. The son selected the horses described in the information from among others on the range, and assisted by Olaf Gravos drove them to the Gravos farm. Lafe Gravos and the other two young men then drove them to the Thompson farm. The Gravos boys returned home. When the defendant came back on March 19, the horses were in his corral. He exam-

ined them for brands and found none. He adopted a surly and evasive attitude toward Henry Gravos when, on March 29, he was informed that the horses belonged to Stevenson. In his testimony he insists that he thought the horses belonged to Lafe Gravos and that he bought all four of them from Lafe on April 1 for $15.00 per head. He says he paid for them by giving Lafe credit on an account which Lafe owed him of between $40.00 and $45.00. The horses remained in his possession until April 30 when he sold them to Wake for a load of oats. He gave none of the oats to Gravos. He sold some of it for cash and kept all of the proceeds. These facts together with other corroborating circumstances are sufficient to sustain the verdict. The defendant maintains as his defense that he innocently purchased the horses from Lafe Gravos which Gravos contradicts. It was the province of the jury to determine which of these men should be believed. The jury resolved this question in favor of the state and their finding will not be disturbed on appeal. The credibility of witnesses and the weight to be given to their testimony are matters for the jury. State v. Ugland, 48 N. D. 841, 187 N. W. 237; State v. Mozinski, 49 N. D. 228, 191 N. W. 345; State v. Severin, 58 N. D. 792, 228 N. W. 199; State v. Young, 55 N. D. 194, 212 N. W. 857; State v. Stumbaugh, 28 S. D. 50, 132 N. W. 666.

The defendant also contends that the evidence fails to identify the horses which were in the defendant's possession as being those described in the information. The evidence on this point is ample. Aside from Stevenson's testimony describing three of the horses and their brands, they were identified by the defendant himself, who testified concerning the horses that were in his corral when he got home on March 19, "I found six horses in there, four that is in the information, and two that we found out belonged to Browning."

The defendant moved for the dismissal of the case at the close of the state's testimony, but did not renew the motion at the close of the entire case, or move for a directed verdict. It is the settled law of this state that error cannot be predicated upon the refusal of the court to advise the jury to render a verdict of acquittal at the close of the state's case. State v. Wright, 20 N. D. 216, 126 N. W. 1023, Ann. Cas. 1912C, 795; State v. Albertson, 20 N. D. 512, 128 N. W. 1122. Section 10,854, Comp. Laws, permits the trial court to advise a jury to

acquit if he deems the evidence insufficient, but the jury is not bound by such advice. State v. Farrier, 61 N. D. 694, 240 N. W. 872; State v. Schell, 65 N. D. 126, 256 N. W. 416. Error cannot be predicated upon the denial of defendant's motion to dismiss the case at the close of the state's testimony. State v. Grams, 65 N. D. 400, 259 N. W. 86; State v. Miller, 59 N. D. 286, 229 N. W. 569; Scott v. State, 37 N. D. 90, 163 N. W. 813, L.R.A.1917F, 1107; Hauptman v. United States (C. C. A. 9th) 43 F. (2d) 86, 282 U. S. 900, 75 L. ed. 793, 51 S. Ct. 212; State v. Tibbits, 207 Iowa, 1033, 222 N. W. 423; State v. Jasmin, 105 Vt. 531, 168 A. 545; State v. Cook, 318 Mo. 1233, 3 S. W. (2d) 365; State v. Baker, 161 Minn. 1, 200 N. W. 815.

The defendant specifies that the court erred in denying a motion of the defendant for a continuance. An examination of the record fails to disclose that such a motion was made. When the case was called for trial the defendant's counsel stated that he felt that he could not safely proceed with the trial because of the absence of J. G. Wake, a witness for the defense, on account of illness. The state's attorney offered to make a stipulation as to matters that might be testified to by Wake. The state's attorney then made a statement as to what he was willing to stipulate would be the testimony of Wake. Defendant's counsel then said: "Mr. J. G. Wake would also testify that he took them from Thompson's place and that he examined the horses described in the complaint for brands and he found no brands. If Wake were present, he would also testify that at the time he got the horses from William Thompson, the defendant, he had bought them from William Thompson, the defendant."

Thus ends the record on this matter. It does not appear that the stipulation was specifically entered into or that any motion for continuance was made. There was no ruling by the court and no error.

The defendant did not request an instruction on petit larceny. He nevertheless contends that it was the duty of the court to instruct the jury on petit larceny as an included crime even though no request for such an instruction was made, and that the omission of such an instruction is reversible error. He argues that the jury might have found from the evidence that the horses were worth only $15.00 each, and that they might also have found that the defendant stole only one horse, thus reducing the offense to petit larceny. It would have required the

application of an involved process of reasoning for the jury to have reached such a conclusion, but assuming that the defendant's contention is correct as to the evidence, the court did not commit error in refusing to instruct on petit larceny in the absence of a request.

The defendant cites as authority, State v. Fordham, 13 N. D. 494, 101 N. W. 888, wherein it is said: "The duty of the court to charge the jury upon the law of the case is especially laid down in the statutes, and this cannot be held to mean less than that it is always necessary that the jury be fully instructed as to all of the elements of the crime."

This case is not in point. Petit larceny is not an element of grand larceny which was the crime for which the defendant was tried. In State v. Murbach, 55 N. D. 846, 215 N. W. 552, the court said: "While some of the authorities hold that failure to instruct as to lesser and included offenses constitutes reversible error even in the absence of a request to do so, nevertheless there are many cases to the contrary. In the cases heretofore decided in this court, in some respects touching the point now raised, we have inclined to .the rule that there is no error by reason of the omission of such instructions in the absence of a request. See State v. Woods, 24 N. D. 156, 139 N. W. 321; State v. Martin, 54 N. D. 840, 211 N. W. 585." See also State v. Bowe, 57 N. D. 89, 220 N. W. 843.

One of the grounds urged by the defendant on his motion for new trial was that of newly discovered evidence, based chiefly upon an affidavit of Lloyd and Tillie Stevens to the effect that Lafe Gravos told them that he had sold the horses to William Thompson. While this evidence is not strictly cumulative it is of that nature. Evidence of similar statements by Lafe Gravos was introduced at the trial. It is well settled in this state that a motion for a new trial on the ground of newly discovered evidence is addressed primarily to the discretion of the trial court, and will not be disturbed on appeal unless there appears to be a manifest abuse of that discretion. State v. Zimmerman, 60 N. D. 256, 233 N. W. 845, 79 A.L.R. 816; State v. Hazer, 57 N. D. 900, 225 N. W. 319; State v. Kerns, 50 N. D. 927, 198 N. W. 698; Strong v. Nelson, 43 N. D. 326, 174 N. W. 869; State v. Cray, 31 N. D. 67, 153 N. W. 425; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419. The affidavit indicates that the affiants live in the same neigh-

borhood as the defendant. No showing of diligence is made. The statement that the defendant did not learn of this testimony until after the trial is not a showing of diligence. Furthermore, it is improbable that the introduction of the proposed testimony would have affected the result. The trial court did not abuse the discretion vested in him in denying the defendant a new trial upon the ground of newly discovered evidence.

An order denying the defendant's motion for new trial was made on July 6, 1936. Notice of appeal from the order was served on September 4, 1936. On August 30, 1937, the defendant served upon the state's attorney of McKenzie County amended specifications of error setting forth many alleged errors based upon the conduct and rulings of the trial court which were not included in the original specifications, and which were not presented to the trial court at the time the motion for new trial was made. These specifications present matters which could and should have been presented to the trial court upon the motion for a new trial if the defendant wished to predicate error thereon. Where a motion for a new trial is made by the defendant he must give the trial court an opportunity of passing upon the alleged errors which he claims to be grounds for a new trial. He cannot withhold such errors from the attention of the trial court, and thereafter urge them upon appeal. He cannot seek a new trial in the Supreme Court upon different grounds than were presented to the court below. State v. Glass, 29 N. D. 620, 151 N. W. 229; State v. Krantz, 55 N. D. 683, 215 N. W. 157; State v. Fradet, 58 N. D. 282, 225 N. W. 789.

The evidence being sufficient to justify the verdict and there being no prejudicial error presented to us for review, the judgment is affirmed.

CHRISTIANSON, Ch. J., and BURR and NUESSLE, JJ., concur.